48 Cal.4th 32 (2010)
COMMITTEE FOR GREEN FOOTHILLS, Plaintiff and Appellant,
v.
SANTA CLARA COUNTY BOARD OF SUPERVISORS et al., Defendants and Respondents;
BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY et al., Real Parties in Interest and Respondents.
No. S163680.
Supreme Court of California.
February 11, 2010.
*38 Wittwer & Parkin, William P. Parkin and Jonathan Wittwer for Plaintiff and Appellant.
Frank G. Wells Environmental Clinic, Sean B. Hecht and Katherine Trisolini for Sierra Club, Endangered Habitats League, Planning and Conservation League, Center for Biological Diversity, Environmental Defense Center and Communities for a Better Environment as Amici Curiae on behalf of Plaintiff and Appellant.
Ann Miller Ravel, County Counsel, Miguel Márquez, Acting County Counsel, and Lizanne Reynolds, Deputy County Counsel, for Defendants and Respondents.
Bingham McCutchen, Stephen L. Kostka, Barbara J. Schussman, Julie Jones and William Bates III for Real Parties in Interest and Respondents.
Remy, Thomas, Moose and Manley and Sabrina V. Teller for League of California Cities, California State Association of Counties and Association of Independent California Colleges and Universities as Amici Curiae on behalf of Defendants and Respondents and Real Parties in Interest and Respondents.
Miller Brown & Dannis, Mark W. Kelley and Clarissa Canady for Education Legal Alliance of the California School Boards Association as Amici Curiae on behalf of Defendants and Respondents and Real Parties in Interest and Respondents.
Brownstein Hyatt Farber Schreck and Lisabeth D. Rothman for California Building Industry Association as Amicus Curiae on behalf of Defendants and Respondents and Real Parties in Interest and Respondents.

OPINION
CORRIGAN, J.
In general, challenges to governmental action under the California Environmental Quality Act (CEQA)[1] face unusually short statutes of limitation. (§ 21167.) Most limitation statutes are triggered by the filing of a public notice, which reports an agency's determination about the applicability of CEQA or the potential environmental impact of a project. (§§ 21108, *39 21152.) As we explain in greater detail, an action challenging this determination must generally be brought within 30 days after the notice is filed. (§ 21167, subds. (b), (c) & (e).)
This case involves a particular kind of challenge following a notice of determination (or NOD). If an NOD has been filed, but an action alleges that no environmental review was undertaken, which statute of limitations applies: (1) the general 30-day limit on challenges following a notice, or (2) the longer 180-day period provided for a case alleging that no environmental determination was made (§ 21167, subd. (a))? We hold that the filing of an NOD triggers a 30-day statute of limitations for all CEQA challenges to the decision announced in the notice. This interpretation is consistent with the language of section 21167 and the general approach of all notice-based statutes of limitation. The Legislature clearly intended the 30-day statute to apply when an agency files an NOD, and this limitations period may not be extended based on the nature of the CEQA violation alleged.
Because the Court of Appeal reached a contrary conclusion, we reverse that judgment.

BACKGROUND
In 2000, the Leland Stanford Junior University (Stanford) applied for a community plan and general use permit (Permit) to add buildings on its campus. An environmental impact report (EIR) prepared for the overall project (the Permit EIR) identified potential environmental effects and proposed specific mitigation measures. The Permit EIR found that the development would significantly impact public access to recreational facilities. In addition to requiring improvements to area parks, a mitigation measure in the Permit EIR directed that Stanford dedicate certain trail easements shown on the Santa Clara County (County) Trails Master Plan[2] and coordinate with the County parks department regarding the trails' locations, uses, construction and management. On December 12, 2000, the County's Board of Supervisors (Board) certified the Permit EIR and approved the Permit. The Permit was expressly conditioned on satisfaction of mitigation measures discussed in the Permit EIR. Relevant here, condition 1.2 required Stanford to "dedicate easements for, develop, and maintain the portions of the two trail alignments which cross Stanford lands shown in the 1995 Santa Clara Countywide Trails Master Plan (Routes S1 and C1) . . . ." Specifically, within one year after *40 Permit approval, Stanford was required to identify trail easements and reach agreements with the County on issues of trail construction, management and maintenance.[3]
Stanford and County staff proposed an agreement in December 2001, but the Board took no action and directed the parties to explore other alternatives for alignment of the S1 trail. In June 2002, the Board directed County staff to proceed with environmental analysis of five S1 routes and four C1 routes. A dispute soon arose about the location of the C1 route, and the Board directed that work be suspended on the C1 alignment. Analysis of the S1 alignment proceeded, however, and a supplemental EIR (SEIR) analyzing three potential S1 routes was published on September 20, 2004. A final SEIR for the S1 trail was completed and presented to the Board on September 13, 2005.
Stanford and the County explored possible alignments for the C1 trail on both sides of San Francisquito Creek. An alignment on the western side would require the agreement and cooperation of San Mateo County, the City of Menlo Park, and the Town of Portola Valley. A trail located on the eastern side would be within Santa Clara County's jurisdiction. However, the eastern alignment was thought to have potentially significant environmental impacts, and County staff believed regulatory approval could be difficult to obtain. On September 13, 2005, the Board instructed County staff to pursue an agreement with Stanford on the location of the C1 alignment.
Subsequent negotiations produced the "Trails Agreement,"[4] which was presented to the Board in December 2005. The Trails Agreement recites that its purpose is to satisfy condition 1.2 of the Permit. Stanford agreed to dedicate easements for the S1 trail and portions of the C1 trail, construct and maintain the S1 trail, and fund improvements to the C1 trail by providing $8.4 million to San Mateo County and $2.8 million to the Town of Portola Valley. The agreement also requires that Stanford provide $1.05 million to the Town of Los Altos Hills for improvements to the C2 connector trail.[5] These funds were intended to pay for C1 trail construction and for "costs to comply with CEQA or to implement mitigation measures . . . ." A map attached to the Trails Agreement shows the C1 trail on the western side of San Francisquito Creek. Elsewhere, however, the agreement explains that this route is "only one possible alignment." The final placement of the C1 trail would depend on *41 further environmental analysis and Stanford's agreement with San Mateo County and the Town of Portola Valley.
On December 13, 2005, the Board authorized the County to enter the Trails Agreement. It also made numerous CEQA findings about existing and proposed trails and certified a final SEIR for the S1 trail. The Board found that no CEQA review was currently required for the C1 trail because approval of the Trails Agreement did "not constitute County approval of construction, operation or maintenance of specific trail improvements" of the C1 trail. Instead, the Trails Agreement contemplated that, before any trail improvements were made, "detailed construction plans [would] be reviewed and considered by the jurisdictions of San Mateo County, Town of Portola Valley and Town of Los Altos Hills . . . ." The Board observed that when these jurisdictions ultimately consider detailed designs and construction plans, "they will be required by CEQA to determine the type and extent of environmental review that is necessary for their actions," and the Trails Agreement provides funds to pay for this environmental review. Accordingly, the Board concluded the County was not required to conduct further CEQA review before entering into the Trails Agreement. The Board thus implicitly determined this aspect of the agreement did not constitute a new project subject to independent CEQA review. Because the agreement obligated Stanford to build trail segments on its own land and to provide funding "for trail construction and environmental compliance" on segments outside the County, the Board found that Stanford had satisfied Permit condition 1.2.
On December 16, 2005, the County filed an NOD with the county clerk. The notice described only the S1 trail alignment. It reported that an EIR had been prepared for this trail project and findings had been made "pursuant to section 15091 of CEQA."[6] Four days later, on December 20, 2005, the County filed a revised NOD. The revised notice included the C1 and C2 trail routes in its description of the project and identified the Board's actions with respect to the trail alignments as part of the project description. Specifically, the notice reported that the County had approved an agreement for the C1 and C2 alignments, but had not approved any specific trail improvements. It explained that plans for such improvements would be reviewed and considered by San Mateo County and the Towns of Portola Valley and Los Altos Hills. The revised NOD again stated that an EIR had been prepared and findings made under CEQA. The revised NOD was posted for 30 days, from December 20, 2005, through January 19, 2006.
On June 9, 2006, 171 days after the revised NOD was filed and posted, the Committee for Green Foothills (Committee) filed a petition for writ of *42 mandamus challenging the County's approval of the Trails Agreement. The Committee complained that the County had violated CEQA by approving a C1 trail alignment located in San Mateo County and Portola Valley without having conducted the necessary environmental review. The County demurred on the ground that the petition was barred by the statute of limitations. The court took judicial notice of both NOD's and sustained the demurrer, reasoning that the timely filing of the notices had triggered the 30-day statute of limitations in section 21167, subdivisions (b), (c) and (e). Although the court initially allowed the Committee leave to amend, it later sustained a demurrer to the amended petition without leave to amend and entered judgment in favor of the County and Stanford.
The Court of Appeal reversed and directed the trial court to grant the Committee another opportunity to amend the petition. The Court of Appeal concluded there was "a reasonable possibility" the Committee could allege facts sufficient to bring its case within the 180-day statute of limitations for actions claiming that an agency approved a project without having determined its potential environmental effects. (§ 21167, subd. (a).) We reverse.

DISCUSSION

I. Standard of Review

(1) On review from an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]" (McCall v. PacifiCare of Cal., Inc. (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We may also consider matters that have been judicially noticed. (Serrano v. Priest (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241]; City of Morgan Hill v. Bay Area Air Quality Management Dist. (2004) 118 Cal.App.4th 861, 869-870 [13 Cal.Rptr.3d 420].) "`A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]' [Citation.]" (Geneva Towers Ltd. Partnership v. City and County of San Francisco (2003) 29 Cal.4th 769, 781 [129 Cal.Rptr.2d 107, 60 P.3d 692].)

II. Statute of Limitations

(2) Whenever a local agency "approves or determines to carry out a project" that is subject to CEQA, the agency must file an NOD within five working days in the county clerk's office of each county where the project *43 will be located. (§ 21152, subd. (a).)[7] The notice must reflect the agency's determination as to whether the project will have a significant effect on the environment and must state whether an EIR has been prepared. (§§ 21108, subd. (a), 21152, subd. (a).) A similar procedure is required if the agency decides to embark on a project it believes is exempt from CEQA (§§ 21080, subd. (b), 21172). If a local agency finds a project is exempt from CEQA, it must file a notice of exemption with all appropriate county clerks. (§ 21152, subd. (b).) Both types of notice must be available for public inspection for 30 days. (§§ 21108, subd. (c), 21152, subd. (c).)
The purpose of these filings is to alert the public about environmental decisions. "Public notification serves the public's right `to be informed in such a way that it can intelligently weigh the environmental consequences of any contemplated action and have an appropriate voice in the formulation of any decision.' (Karlson v. City of Camarillo (1980) 100 Cal.App.3d 789, 804 [161 Cal.Rptr. 260].) This public participation assists the agency in weighing mitigation measures and alternatives to a proposed project. (§§ 21100, 21151.)" (Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn. (1986) 42 Cal.3d 929, 938 [231 Cal.Rptr. 748, 727 P.2d 1029].)
(3) The NOD plays a crucial role in determining the period during which CEQA challenges may be brought. Section 21167 establishes statutes of limitation for all actions and proceedings alleging violations of CEQA. (International Longshoremen's & Warehousemen's Union v. Board of Supervisors (1981) 116 Cal.App.3d 265, 271 [171 Cal.Rptr. 875] (ILWU).)[8]
*44 (4) Which subdivision of section 21167 applies depends upon the nature of the CEQA violation alleged. "In substance, subdivision (a) pertains to an action charging the public agency with approving or undertaking a project having a significant effect on the environment without any attempt to comply with CEQA, subdivision (b) pertains to an action alleging that the public agency has improperly determined that the project does not have a significant effect on the environment, subdivision (c)pertains to an action alleging that the EIR fails to comply with the requirements of CEQA, subdivision (d) pertains to an action charging that the public agency has improperly determined that the project is exempt from CEQA, and subdivision (e) is a catchall provision governing an action based on any other failure of the public agency to comply with CEQA." (ILWU, supra, 116 Cal.App.3d at p. 271.) A section 21167, subdivision (a) challenge alleges that an agency approved a project without determining its potential environmental impact. Obviously, the time for filing a subdivision (a) claim is not triggered by an NOD, because the allegation is that no determination was ever made. For all other claims, however, subdivisions (b) through (e) link the start of the limitations period to the filing of a notice of determination or exemption.[9]
(5) This case does not challenge the initial approval of a project. The County granted a permit and certified a program EIR for Stanford's development project more than five years before the Committee filed suit. The Committee has instead challenged the approval of an activity that was undertaken to ameliorate an environmental impact of Stanford's project. The Trails Agreement, the target of the Committee's attack, sets guidelines for the future construction and maintenance of certain trails. Stanford was required to construct these trails by a condition of its Permit, and the condition was imposed to implement a mitigation measure identified in the Permit EIR. Under these circumstances, the Trails Agreement cannot be considered an independent project. Rather, it is a subsequent activity encompassed within the original project. After a program EIR, like the Permit EIR, has been prepared, subsequent activities in the program must be examined in light of the EIR to determine whether additional environmental review is necessary. *45 (Guidelines, § 15168, subd. (c).) If no new environmental effects are expected, the agency can approve the activity as within the scope of the prior EIR. (Guidelines, § 15168, subd. (c)(2).) In addition to the Permit EIR, the Trails Agreement was also a subsequent activity encompassed within the SEIR prepared for the Trails Master Plan. This program EIR "evaluate[d], at a broad level, the environmental effects of implementing the County's policies for the planning, acquisition, design, operations, and maintenance of Countywide trails and trail facilities."
Because the Committee's suit does not challenge either of these prior EIR's, or the SEIR prepared for the S1 trail alignment, the limitations period in section 21167, subdivision (c) does not apply. Nor are we concerned with subdivision (d), because this case does not concern an activity claimed to be exempt from CEQA. Here, the Committee artfully alleges that the Trails Agreement constituted a "project" and that the County approved this project without determining its environmental effects. The Committee contends these allegations bring the case within the 180-day statute of limitations of subdivision (a). The County and Stanford counter that the 30-day statute of either subdivision (b) or (e) applies because the County filed an NOD announcing its finding that approval of the Trails Agreement would not have a significant effect on the environment.
(6) Whether the Committee's action is barred as a matter of law thus rests on a threshold legal question: Does the filing of an NOD invariably trigger one of the 30-day statutes of limitation in section 21167, regardless of the type of CEQA violation alleged? To answer this question, we apply well-established principles of statutory construction to determine the Legislature's intent in enacting section 21167, "`so that we may adopt the construction that best effectuates the purpose of the law.' [Citations.]" (City of Burbank v. State Water Resources Control Bd. (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) "`We begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (People v. Hudson (2006) 38 Cal.4th 1002, 1009 [44 Cal.Rptr.3d 632, 136 P.3d 168].)' (Shirk v. Vista Unified School Dist. (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630].) We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations. (People v. King [(2006)] 38 Cal.4th [617,] 622 [42 Cal.Rptr.3d 743, 133 P.3d 636].)" (Miklosy v. Regents of University of California (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].)

*46 A. Statutory Language

The language of section 21167 strongly suggests that the Legislature intended the filing of an NOD to trigger a 30-day statute of limitations. With the exception of subdivision (a), each of the limitation periods in section 21167 is triggered by the filing of a notice of determination or exemption and continues for only 30 or 35 days. (§ 21167, subds. (b)-(e).) In contrast, the limitations period in subdivision (a) starts when a project is approved or begun, and it continues for 180 days. (§ 21167, subd. (a).) Because subdivision (a) applies to suits alleging that an agency has approved or undertaken a project "without having determined whether the project may have a significant effect on the environment" (§ 21167, subd. (a), italics added), it would not have made sense to measure the limitations period from the filing of an NOD. If an agency has made no determination about the environmental impact of a project, it has no determination to announce. As we have explained in the past, subdivision (a) reflects "the Legislature['s] determin[ation] that the initiation of the project provides constructive notice of a possible failure to comply with CEQA. Such a notice is a substitute for the public notification measures set forth in section 21092."[10] (Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn., supra, 42 Cal.3d at p. 939; see also Oceanside Marina Towers Assn. v. Oceanside Community Development Com. (1986) 187 Cal.App.3d 735, 741-742 [231 Cal.Rptr. 910].)
But what do we make of a situation in which an agency decides no environmental review of a certain activity is required, approves the activity without conducting review, but also announces its conclusion in an NOD? This is essentially what happened here. The County approved the Trails Agreement after deciding that no environmental review was presently required, and it disclosed these findings to the public in an NOD. As noted, the Trails Agreement was not a project but a subsequent activity encompassed within the Permit EIR and the Trails Master Plan SEIR. Because in-depth environmental review was previously undertaken in these program EIR's, further review is generally not required except in limited circumstances. (§ 21166; Guidelines, §§ 15162, 15168.) This situation is not particularly unusual. Agencies may determine that supplemental environmental review is not required for a subsequent activity, and CEQA requires them to publicly notice these determinations. (See §§ 21108, subd. (a), 21152, subd. (a).)
*47 Section 21167 does not specifically define the limitations period that applies to this factual scenario. However, a related subdivision, not on point here, sheds light on the importance the Legislature has given to the filing of a public notice in determining the applicable limitations period. Section 21167, subdivision (d) addresses the analogous situation that arises when an agency conducts no environmental review because it believes a project is statutorily exempt from CEQA.[11] If the agency files a notice of exemption alerting the public to its conclusion (§§ 21108, subd. (b), 21152, subd. (b)), any action or proceeding challenging this decision must be brought within 35 days after the notice was filed. (§ 21167, subd. (d).) But if the agency simply proceeds with a project it believes to be exempt and does not file the required notice, subdivision (d) permits a legal challenge to be brought up to 180 days after the agency's decision or commencement of the project. (§ 21167, subd. (d).)
(7) This difference indicates that the determinative question, for purposes of defining the statute of limitations, is not what type of violation the plaintiff has alleged, but whether the action complained of was disclosed in a public notice. When an agency gives the public notice of its decision that a project is exempt from CEQA, just like a notice of any other determination under CEQA, the public can be expected to act promptly in challenging this decision. However, when an agency does not give the statutorily required notice, and the public is held to constructive notice based on the start of the project, the Legislature has determined that a longer limitations period should apply.
(8) The principle illustrated in subdivision (d) is evident in all the other limitation periods set forth in section 21167. If a state or local agency has filed an NOD stating whether a project will have a significant environmental impact (see §§ 21108, subd. (a), 21152, subd. (a)), the statute of limitations for all types of CEQA claims related to the project is 30 days from the date the notice was filed. The 30-day statute applies to claims challenging an agency's determination about environmental impact (§ 21167, subd. (b)), claims challenging the adequacy of an EIR (§ 21167, subd. (c)), and all other claims alleging CEQA violations (§ 21167, subd. (e)). If a state or local agency has made no environmental impact determination, the statute of limitations is 180 days, measured from the date of the agency's approval or the start of the project. (§ 21167, subd. (a).) In such cases, project approval or initiation is deemed constructive notice for potential CEQA claims.
(9) Accordingly, the plain language of section 21167 makes the filing of a notice of determination of paramount importance for determining which *48 statute of limitations applies to a CEQA claim. If a valid NOD has been filed (§§ 21108, subd. (a), 21152, subd. (a)), any challenge to that decision under CEQA must be brought within 30 days, regardless of the nature of the alleged violation. The statutory language does not authorize an extension of this 30-day period if the suit alleges that, despite the filing of an NOD, the project was approved without a prior environmental assessment.

B. Other Evidence of Legislative Intent

To the extent the language of section 21167 is ambiguous, we may consult extrinsic aids to determine the Legislature's intent. (Miklosy v. Regents of University of California, supra, 44 Cal.4th at p. 888.) Here, both the regulatory guidelines implementing CEQA[12] and relevant legislative history suggest that the Legislature meant to impose a shorter statute of limitations for all types of CEQA claims following a notice of determination or exemption.
Section 15112, subdivision (c) of the Guidelines summarizes the limitation periods for CEQA challenges as follows: "(1) Where the public agency filed a notice of determination in compliance with Sections 15075 or 15094, 30 days after the filing of the notice and the posting on a list of such notices. [¶] (2) Where the public agency filed a notice of exemption in compliance with Section 15062, 35 days after the filing of the notice and the posting on a list of such notices. [¶] . . . [¶] (5) Where none of the other statute of limitations periods in this section apply, 180 days after either: [¶] (A) The public agency's decision to carry out or approve the project, or [¶] (B) Commencement of the project if the project is undertaken without a formal decision by the public agency."[13] Thus, the Guidelines explain that the applicable statute of limitations depends in the first instance on whether a public notice was filed. If a notice of determination or exemption was properly filed, a 30-day or 35-day statute applies. This period is extended to 180 days only in cases where no public notice was given. (See also Remy et al., Guide to the Cal. Environmental Quality Act (CEQA) (10th ed. 1999) p. 574 ["In cases where agencies are proceeding with no CEQA compliance whatsoever and have failed to file a notice of exemption, aggrieved persons have 180 days to file a legal challenge . . . ." (italics added)].) Sections of the Guidelines describing the requirements for an NOD also state that the filing of such a notice *49 invariably "start[s] a 30-day statute of limitations on court challenges to the approval [of a project] under CEQA." (Guidelines, §§ 15075, subd. (g), 15094, subd. (g).)
Legislative history, although shedding little light on the question before us, contains some support for the Guidelines' interpretation. Section 21167 was added to the Public Resources Code in 1972, as part of a bill that also added the notice of determination provisions of sections 21108 and 21152. (Stats. 1972, ch. 1154, §§ 9, 12, 16, pp. 2275-2278.)[14] As first enacted, section 21167 defined only the three limitation periods set forth in subdivisions (a) through (c). (Stats. 1972, ch. 1154, § 16, pp. 2277-2278.) Less than two years later, the Legislature amended section 21167 to add subdivisions (d) and (e). (Stats. 1974, ch. 56, § 3, pp. 125-126.) Assembly Bill No. 2338 (1973-1974 Reg. Sess.), which made these changes, was passed as an urgency measure to clarify the limitation periods for CEQA claims. (Stats. 1974, ch. 56, § 5, p. 126.)
Two enrolled bill reports concerning Assembly Bill No. 2338 (1973-1974 Reg. Sess.) are of interest here.[15] A Department of Water Resources report noted that, in addition to creating a new 35-day statute of limitations for challenges to exemption determinations, the bill also retained the 30-day statute of limitations for claims that challenge an agency's determination of environmental impacts or challenge the adequacy of an EIR. "Thus," the report concluded, "essentially any determinations made by public agencies under the Environmental Quality Act will be subject to a 30 or 35 day challenge limitation, provided a notice of determination has been filed. If no notice is filed or utilized, a 180-day period of limitation applies." (Dept. of Water Resources, Enrolled Bill Rep. on Assem. Bill No. 2338 (1973-1974 Reg. Sess.) Feb. 25, 1974.) A similar conclusion was drawn in an enrolled bill report prepared by the Governor's Office of Planning and Research, which has special expertise in interpreting the CEQA statutes. (See, e.g., § 21083 [directing the Office of Planning and Research to develop the Guidelines].) This report noted that, in addition to providing a 35-day statute of limitations for exemption determinations, Assembly Bill No. 2338 "[r]equires that any action alleging that any act or omission of a public agency does not comply with the provisions of CEQA must be commenced within 30 days after the *50 required filing of notice." (Governor's Off. of Planning & Research, Enrolled Bill Rep. on Assem. Bill No. 2338 (1973-1974 Reg. Sess.) Mar. 1, 1974.)[16]
In enacting and amending section 21167, the Legislature clearly sought to place strict limits on the time during which projects may be challenged under CEQA. To this end, it mandated that CEQA suits be brought within 30 days after an NOD is filed. (§ 21167, subds. (b), (c) & (e).) The Committee has directed us to nothing in the legislative history that suggests the Legislature intended to extend this period sixfold whenever, despite the notice, the plaintiff alleges no true environmental determination was made.
The interpretation we reach is also consistent with a key policy served by these statutes: "the prompt resolution of challenges to the decisions of public agencies regarding land use. [Citation.]" (Citizens for a Megaplex-Free Alameda v. City of Alameda (2007) 149 Cal.App.4th 91, 111 [56 Cal.Rptr.3d 728] (Megaplex-Free Alameda).) CEQA "contains a number of provisions evidencing the clear `legislative determination that the public interest is not served unless challenges under CEQA are filed promptly' (Oceanside Marina Towers Assn. v. Oceanside Community Development Com.[, supra,] 187 Cal.App.3d [at p.] 741 . . .) . . . ." (Board of Supervisors v. Superior Court (1994) 23 Cal.App.4th 830, 836 [28 Cal.Rptr.2d 560].) In addition to the short statutes of limitation in section 21167, other statutes impose expedited schedules for briefing (§ 21167.4) and preparation of the administrative record (§ 21167.6), and require that CEQA cases be given preferential hearing in the trial and appellate courts (§ 21167.1). "Patently, there is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on to the potential serious injury of the real party in interest." (Board of Supervisors v. Superior Court, at p. 837.)
A bright-line rule that the filing of an NOD triggers a 30-day statute of limitations promotes certainty, allowing local governments and developers to proceed with projects without the threat of potential future litigation. (Cf. § 21167.2 [after expiration of the 30-day period in § 21167, subd. (c), an EIR is conclusively presumed to be valid]; Laurel Heights Improvement Assn. v. Regents of University of California (1993) 6 Cal.4th 1112, 1130 [26 Cal.Rptr.2d 231, 864 P.2d 502] ["This presumption acts to preclude reopening of the CEQA process even if the initial EIR is discovered to have been fundamentally inaccurate and misleading in the description of a significant *51 effect or the severity of its consequences."].) If the 30-day limitation periods triggered by the filing of an NOD could be defeated by a mere allegation that the parties proceeded without having made a sufficient determination about potential environmental impacts, the certainty normally afforded by the filing of an NOD would be lost. Developers would have to wait a full 180 days before embarking on a project to avoid potential interruption by litigation. Such delay and uncertainty are precisely what the Legislature sought to avoid when it enacted the unusually short limitation periods in section 21167. (See San Franciscans for Reasonable Growth v. City and County of San Francisco (1987) 189 Cal.App.3d 498, 504 [234 Cal.Rptr. 527] ["Obviously, the rationale of the statutory scheme is to avoid delay and achieve prompt resolution of CEQA claims."].)

III. Application to the Present Case

A. Thirty-day Statute of Limitations Applies

Because the County filed an NOD concerning its approval of the Trails Agreement, any CEQA challenge to this approval had to be brought within 30 days. The Committee's argument that a longer limitations period should apply because the County allegedly approved the agreement without conducting any environmental review turns the notice-based system of section 21167 on its head.
A similar argument was rejected decades ago in California Manufacturers Assn. v. Industrial Welfare Com. (1980) 109 Cal.App.3d 95, 124-125 [167 Cal.Rptr. 203]. There, an association argued that the 30-day statutes of limitation in section 21167, subdivisions (b) and (e) apply only if the agency has undertaken an environmental investigation and filed a valid notice of determination and negative declaration. (California Manufacturers, at pp. 124-125.) The Court of Appeal disagreed, noting this assertion "flies in the face of the clear language of the statutes which provide that they apply in (b), where it is alleged that the agency has `improperly determined' whether there will be a significant impact and in (e), where it is alleged that agency action or omission `does not comply' with statutory requirements." (California Manufacturers, at p. 125.) We agree with this analysis. For purposes of the CEQA statutes of limitation, the question is not the substance of the agency's decision, but whether the public was notified of that decision.
Thus, the Committee cannot avail itself of the 180-day statute of limitations in section 21167, subdivision (a). Subdivision (a) addresses claims that an agency has ignored CEQA and made no attempt to satisfy its requirements. When an NOD has been filed, the agency has at a minimum acknowledged CEQA and attempted compliance. In these situations, the Legislature has limited the time for filing suit to 30 days.
*52 Precisely which 30-day statute in section 21167 applies in this case is somewhat harder to discern. Subdivision (b) addresses claims that an agency has made an improper determination about the environmental impact of a project. Because the Committee takes issue with the County's determination that approval of the Trails Agreement would have no significant effect on the environment, this claim can be understood as a challenge to an "improper determination" about potential impacts of the agreement. But this case does not fit neatly within subdivision (b). Subdivision (b) typically governs challenges to the initial approval of a project, when a negative declaration or mitigated negative declaration has been filed. The Trails Agreement was not a CEQA project being considered for initial approval. It was a "[s]ubsequent activit[y]" to Stanford's broader development project and the County's Trails Master Plan. (Guidelines, § 15168, subd. (c).) Each of these larger projects had been previously evaluated in a program EIR.
If section 21167, subdivision (b) does not apply here, however, the appropriate limitations period is still 30 days under the catchall provision of subdivision (e). In addition to the CEQA claims addressed elsewhere in the statute, section 21167, subdivision (e) states that CEQA challenges to any other act or omission by a public agency must be filed within 30 days after an NOD is filed. (§ 21167, subd. (e).) Because the Committee brought this challenge more than 30 days after the County disclosed its approval of the Trails Agreement in an NOD, the action is clearly time-barred under section 21167, subdivision (e).

B. Notice of Determination Was Not Defective

The Committee also argues the County's NOD did not trigger a 30-day statute of limitations because the notice was invalid.
(10) Several cases have made an exception to the strict limitation periods in section 21167 when the notice of determination is materially defective. The Guidelines describe the contents and filing procedures required for an NOD filed in connection with a negative declaration (Guidelines, § 15075) or EIR (id., § 15094). Among other things, the NOD must identify and briefly describe the project; identify the lead agency and responsible agency (if applicable); state the date of project approval and the agency's environmental impact determination; report that a negative declaration, mitigated negative declaration or EIR has been adopted, and give the address where it may be examined; and state whether mitigation measures were required as a condition of approval. (Id., §§ 15075, subd. (b), 15094, subd. (b).) The Guidelines contain a similar list for notices of exemption. (Id., § 15062, subd. (a).)
In ILWU, supra, 116 Cal.App.3d 265, 273, the court refused to hold the plaintiffs to the 35-day statute of limitations in section 21167, subdivision (d) *53 because the notice of exemption filed for the project "was not in substantial compliance with the notice requirements" in the Guidelines. There, "[t]he project description was the only required item of information contained in the notice and even that was of debatable adequacy." (ILWU, at p. 273.) Most notably, the notice did not state that the project had been found to be exempt or explain the reasons for this finding. (Ibid.) Because of these substantial deficiencies, the court concluded the notice was not adequate to trigger the short limitations period in section 21167, subdivision (d). (ILWU, at pp. 273-274; see also County of Amador v. El Dorado County Water Agency (1999) 76 Cal.App.4th 931, 962-963 [91 Cal.Rptr.2d 66] [notice of exemption was not valid, and did not trigger 35-day limitations period, because it was filed before the project was approved]; Sierra Club v. City of Orange (2008) 163 Cal.App.4th 523, 532 [78 Cal.Rptr.3d 1] [notice of determination that misstated project approval date did not trigger 30-day limitations period in § 21167, subd. (c)].) Defects in the posting of the notice have also been held to prevent the running of the limitation periods in section 21167. In Citizens of Lake Murray Area Assn. v. City Council (1982) 129 Cal.App.3d 436, 438, 440-441 [181 Cal.Rptr. 123], the court excused the plaintiffs from the 30-day statute of limitations because, although a valid NOD had been filed, the county clerk had failed to post the notice in accordance with section 21152, subdivision (c).
The Committee attempts to rely on these defective notice cases. It complains the County's revised NOD of December 20, 2005, was either inadequate or an improper attempt to "bootstrap" a determination about the C1 trail alignment onto the NOD of December 16, 2005, concerning certification of the SEIR for the S1 alignment. These arguments are unpersuasive. The trial court found that both the initial and the revised NOD's "were at a minimum in substantial compliance with CEQA Guidelines § 15094," and the Committee does not dispute that the revised notice contained every item of information this provision required. The notice appropriately identified the three applicable EIR's for the project: the S1 SEIR, the Permit EIR, and the Trails Master Plan SEIR. The Committee argues these references should have been explained so that the public would understand how the EIR's related to the C1 trail; however, section 15094 of the Guidelines does not require such a discussion. We decline to impose additional requirements for an NOD beyond those described in the Guidelines. (Cf. Lee v. Lost Hills Water Dist. (1978) 78 Cal.App.3d 630, 634 [144 Cal.Rptr. 510] [in CEQA context, due process does not require better notice than that prescribed by statute].)
The Committee also argues the County's use of a revised notice was misleading. Because the initial notice concerned only the S1 trail, the Committee asserts the public would likely expect a "revised" notice also to be limited to the S1 trail. The Committee suggests a separate NOD should have been issued for the C1 trail alignment because this alignment was a *54 separate project, and "it would invite mischief" to permit the inclusion of additional projects in a revised NOD. This argument is also unpersuasive. The County filed an NOD to advise the public about the resolution it adopted on December 13, 2005. In this resolution, the Board certified an SEIR for the S1 trail and gave the County authority to enter the Trails Agreement. Among other things, the Trails Agreement addressed the future development of the C1 and C2 trails. It was appropriate for the County to notify the public about both aspects of the resolution. Although it might have done so by filing separate NOD's for the S1 trail SEIR and the agreement concerning the C1 and C2 trails, the Committee cites nothing in the CEQA statutes or Guidelines that prevented the disclosure of both approvals in a single notice. Nor is there reason to believe the County acted with some nefarious intent when it issued a revised notice to include the C1 and C2 trails. The Committee suggests the County was trying to hide this approval in the revised notice, but the Board's resolution was passed after a public meeting in which the Committee's own representative participated. Moreover, the revised notice itself clearly alerted the public to the agreements pertaining to the C1 and C2 trails. The Legislature has given great significance to the NOD as a trigger for CEQA's short statutes of limitation. It is the responsibility of potential litigants to review these notices, and any revisions, with care.

C. No New CEQA Document Was Required

The Committee also contends the revised NOD was invalid because "[t]he legislative scheme does not permit an agency to file notices of determination anytime it deems fit." (Initial capitalization omitted.) Instead, according to the Committee, an agency may file an NOD only when it has made an environmental determination and prepared a corresponding negative declaration or EIR. This argument is yet another artful way of asserting that a facially valid NOD does not trigger one of the 30-day limitation periods in section 21167 if the underlying approval process does not comply with CEQA. As we have explained, however, a merits-based inquiry is irrelevant to a statute of limitations analysis. The argument also fails on its own terms.
(11) The notice of determination statutes do not mention the need for a corresponding EIR or negative declaration, nor do they state that the required NOD may be filed only when a CEQA document has been prepared. (§§ 21108, 21152.) Indeed, CEQA does not require an EIR to be prepared for every step taken in the course of a project. Once a proper EIR has been prepared, no subsequent or supplemental EIR is required unless (1) "[s]ubstantial changes" are proposed in the project, requiring "major revisions" in the EIR; (2) substantial changes arise in the circumstances of the project's undertaking, requiring major revisions in the EIR; or (3) new information appears that was not known or available at the time the EIR was certified. *55 (§ 21166; see also Guidelines, § 15162; Sierra Club v. County of Sonoma (1992) 6 Cal.App.4th 1307, 1317 [8 Cal.Rptr.2d 473].) "[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired (§ 21167, subd. (c)), and the question is whether circumstances have changed enough to justify repeating a substantial portion of the process." (Bowman v. City of Petaluma (1986) 185 Cal.App.3d 1065, 1073 [230 Cal.Rptr. 413], italics omitted.)
(12) When the environmental effects of a large or complex project have been reviewed in a program EIR, "[s]ubsequent activities in the program must be examined in the light of the program EIR to determine whether an additional environmental document must be prepared." (Guidelines, § 15168, subd. (c).) If the later activity could have environmental effects not previously examined in the program EIR, the agency must prepare an initial study, leading to an EIR or negative declaration for the new activity. (Id., § 15168, subd. (c)(1).) However, "[i]f the agency finds that . . . no new effects could occur or no new mitigation measures would be required, the agency can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document would be required." (Id., § 15168, subd. (c)(2), italics added; see also id., § 15168, subd. (c)(5) [noting that many subsequent activities may be found within the scope of a comprehensive program EIR, such that "no further environmental documents would be required"].)
As discussed, the Trails Agreement was a "[s]ubsequent activit[y]" described by section 15168, subdivision (c) of the Guidelines. It was entered for the express purpose of satisfying a mitigation measure that was identified in the Permit EIR. Accordingly, the County was required to evaluate the activities contemplated in the Trails Agreement to determine whether they could produce any environmental effects not examined in the relevant program EIR's. (Guidelines, § 15168, subd. (c).) It apparently did so. The Board issued a resolution that referenced the Permit EIR and the Trails Master Plan SEIR and found no additional CEQA review was required before execution of the Trails Agreement. The resolution explained that the precise locations of the C1 and C2 alignments had not been decided, and the Trails Agreement contemplated further CEQA review once more detailed plans for these trails were developed.
We need not decide whether the County's determination was proper. Such arguments go to the merits of the Committee's complaint. For our purposes, it matters only that the County evaluated the Trails Agreement as a subsequent activity to a program EIR. The record indicates that it did. When the County determined that no environmental review of the agreement was presently *56 required, it impliedly found the agreement to be within the scope of the Permit EIR and the Trails Master Plan SEIR. (See Megaplex-Free Alameda, supra, 149 Cal.App.4th at pp. 114-115 [no express findings are required when agency determines no further EIR is required for a subsequent activity under § 21166].) Under these circumstances, no new environmental document was required. (Guidelines, § 15168, subd. (c)(2).)
When, as in this case, an agency determines a subsequent activity is within the scope of a program EIR and requires no further environmental review, must it file an NOD concerning its approval of the activity? The CEQA statutes and Guidelines do not directly address this question, although such a notice would seem to be required under the general rule that an agency file an NOD "[w]henever [it] approves or determines to carry out a project that is subject to" CEQA. (§§ 21108, subd. (a), 21152, subd. (a).) Moreover, CEQA specifically requires the filing of an NOD in the analogous context of subsequent projects to a master EIR. Even when the agency concludes a subsequent project will have no significant environmental effect not evaluated in the master EIR, and thus does not produce findings or prepare a new CEQA document, it must file an NOD announcing approval of the project. (§ 21157.1, subd. (c).)[17] We need not decide whether CEQA requires an NOD for every subsequent activity approved as being within the scope of an earlier EIR. It is sufficient to observe that NOD's are frequently filed for approvals of subsequent activities under section 21166. (See, e.g., Mani Brothers Real Estate Group v. City of Los Angeles (2007) 153 Cal.App.4th 1385, 1393 [64 Cal.Rptr.3d 79]; Megaplex-Free Alameda, supra, 149 Cal.App.4th at p. 99; American Canyon Community United for Responsible Growth v. City of American Canyon (2006) 145 Cal.App.4th 1062, 1069 [52 Cal.Rptr.3d 312]; Santa Teresa Citizen Action Group v. City of San Jose (2003) 114 Cal.App.4th 689, 699 [7 Cal.Rptr.3d 868]; Natural Resources Defense Council, Inc. v. City of Los Angeles (2002) 103 Cal.App.4th 268, 278 [126 Cal.Rptr.2d 615].)
(13) When an agency files an NOD for the approval of a subsequent activity, and, in accordance with section 21166 and Guidelines section 15168, no negative declaration or EIR has been prepared for the activity, section 21167, subdivision (e) appears to furnish the appropriate statute of limitations for challenges to the agency's action. The issue in such cases is "`"limited to the legality of the agency's decision about whether to require a subsequent or supplemental EIR, or subsequent negative declaration . . . ."'" (Megaplex-Free Alameda, supra, 149 Cal.App.4th at p. 110.) A lawsuit *57 challenging this decision might attack the agency's evaluation of the activity's potential environmental effects, or it might attack the agency's interpretation of the scope of the program EIR. Either way, it is "[a]n action or proceeding alleging that [an] act or omission of a public agency does not comply with" CEQA, and section 21167, subdivision (e) requires that it be brought within 30 days after the filing of the NOD.

IV. Conclusion

(14) Because the Committee filed its petition more than 30 days after the County reported its approval of the Trails Agreement in an NOD, the suit is time-barred. (§ 21167, subd. (e).)

DISPOSITION
The judgment of the Court of Appeal is reversed and the matter remanded for entry of judgment in favor of the County and Stanford.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.
NOTES
[1] Public Resources Code section 21000 et seq. All statutory references are to the Public Resources Code.
[2] The Trails Master Plan was adopted in 1995 as part of the County's general plan. It establishes County policies for the location, management, dedication and use of trails. The Trails Master Plan also describes the general alignment of various proposed trail routes, including the S1 subregional trail and the C1 connector trail.
[3] We presume, and appellant does not dispute, that the County filed appropriate NOD's during these initial stages of the project's approval.
[4] Formally called the Agreement for Trail Easements, Construction, Management and Maintenance and Grant of Easements.
[5] If these neighboring jurisdictions do not agree to construct the trail improvements by December 31, 2011, the money must be paid to the County and used for the sole purpose of mitigating the adverse impact on recreation identified in the Permit.
[6] This reference is to section 15091 of the CEQA Guidelines. (Cal. Code Regs., tit. 14, § 15000 et seq.; hereafter Guidelines.)
[7] State agencies must file an NOD with the Governor's Office of Planning and Research. (§ 21108, subd. (a).)
[8] Section 21167 states, in relevant part:

"An action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows:
"(a) An action or proceeding alleging that a public agency is carrying out or has approved a project that may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project.
"(b) An action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152.
"(c) An action or proceeding alleging that an environmental impact report does not comply with this division shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152 by the lead agency.
"(d) An action or proceeding alleging that a public agency has improperly determined that a project is not subject to this division pursuant to subdivision (b) of Section 21080 or Section 21172 shall be commenced within 35 days from the date of the filing by the public agency, or person specified in subdivision (b) or (c) of Section 21065, of the notice authorized by subdivision (b) of Section 21108 or subdivision (b) of Section 21152. If the notice has not been filed, the action or proceeding shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project.
"(e) An action or proceeding alleging that another act or omission of a public agency does not comply with this division shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152."
[9] Subdivisions (b), (c), and (e) of section 21167 all provide for a 30-day limitations period. Subdivision (d) provides a 35-day period for projects found to be exempt from CEQA, but it extends this period to 180 days if no notice of exemption was filed.
[10] Section 21092 requires an agency to give the public notice that it is preparing an EIR or a negative declaration for a proposed project. (See Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn., supra, 42 Cal.3d at p. 935.) This notice is different from a notice of determination, which announces the agency's ultimate conclusion about the project's expected environmental consequences.
[11] A project is exempt from CEQA if, for example, it is purely ministerial, or if it involves emergency preparedness or emergency repairs. (See § 21080 [listing exemptions]; see also § 21172.)
[12] Although this court "has not decided the issue of whether the Guidelines are regulatory mandates or only aids to interpreting CEQA," we have observed that, "[a]t a minimum, . . . courts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA." (Laurel Heights Improvement Assn. v. Regents of University of California (1988) 47 Cal.3d 376, 391, fn. 2 [263 Cal.Rptr. 426, 764 P.2d 278].)
[13] Omitted subdivisions concern CEQA actions challenging the certification of a state agency's regulatory program (§ 21080.5). These suits are also subject to a 30-day statute of limitations. (Guidelines, § 15112, subd. (c)(3)-(4).)
[14] At the request of both sides, we have taken judicial notice of the relevant legislative history for section 21167.
[15] "[W]e have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent." (Elsner v. Uveges (2004) 34 Cal.4th 915, 934, fn. 19 [22 Cal.Rptr.3d 530, 102 P.3d 915].)
[16] This statement may have been an inartful summary of the new "catchall" provision in section 21167, subdivision (e). However, it may also have reflected an interpretation of section 21167 as prescribing a 35-day statute in the exemption context and a 30-day statute for all other claims brought after a notice of determination. As noted, this interpretation is reflected in the Guidelines. (Guidelines, §§ 15112, subd. (c), 15075, subd. (g), 15094, subd. (g).)
[17] One CEQA treatise states that the filing of an NOD is mandatory for subsequent activities to a master EIR but discretionary for subsequent activities to a program EIR. (Remy et al., Guide to the Cal. Environmental Quality Act (CEQA), supra, at pp. 520-521.) The authors suggest that agencies may wish to file NOD's in the discretionary context to gain the benefit of a 30-day statute of limitations. (Id., at p. 521, citing § 21167.)