Filed 4/2/20

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| COALITION FOR AN EQUITABLE WESTLAKE/MACARTHUR PARK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents;<br><br>ADRIAN JAYASINHA et al.,<br><br>    Real Parties in Interest and Respondents. | B293327<br><br>(Los Angeles County Super. Ct. No. BS172664) |


APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Claudia Medina, for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Terry Kaufmann Macias, Senior Assistant City Attorney, John W. Fox and Liliana M. Rodriguez, Deputy City Attorneys; Thomas Law Group, Amy R. Higuera, Christopher J. Butcher, for Defendants and Respondents.

Park & Velayos, Francis Y. Park, Steven D. Atlee, for Real Parties in Interest and Respondents.

————————————

**INTRODUCTION**

Plaintiff and appellant Coalition for an Equitable Westlake/Macarthur Park (the Coalition) filed a petition for writ of mandate, seeking a peremptory writ directing respondents City of Los Angeles (City of LA), Los Angeles City Council (City Council), and Los Angeles Department of City Planning (Planning Department) (collectively, "the City") to set aside various land use approvals, as well as determinations and documents approved under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1] Adrian Jayasinha and the

—————————

[1] All further statutory references are to CEQA provisions as codified in Public Resources Code sections 21000–21177 unless otherwise indicated. Where applicable, the CEQA guidelines (Cal. Code Regs., tit. 14, §§ 15000–15387) will be noted as "Guidelines" throughout the text to

2

Walter and Aeshea Jayasinghe Family Trust ("Real Parties in Interest") and the City filed demurrers, arguing that the Coalition's claims were barred under the statute of limitations and the Coalition had failed to exhaust its administrative remedies. The trial court sustained the demurrers without leave to amend and dismissed the Coalition's petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### *Project approvals*

The Lake on Wilshire Project ("the Project"), is a mixed-use project consisting of a hotel, a residential tower, and a multi-purpose center with a theater.[3] The Real Parties in Interest are the Project applicants.

---

distinguish between the Public Resources Code and the Code of Regulations.

[2] Together with its opening brief, the Coalition filed a request for judicial notice, asking this court to take judicial notice of three exhibits. We deny the Coalition's request for the following reasons: (1) Exhibit A to the request is irrelevant to the disposition of the current appeal. (2) Exhibits B and C comprise the supplemental record filed with this court on February 10, 2020.

[3] The Coalition describes the Project in its petition as "a mixed-use residential-commercial project with a 220-room hotel, 478 residential dwelling units in a 41-story tower, and

On March 3, 2017, after holding a hearing, the Deputy Advisory Agency (Agency)[4] for the City of LA approved the Project's Vesting Tentative Tract Map (Tract Map) and certified[5] a mitigated negative declaration (MND) for the

---

a 69,979 square foot learning, cultural, and performing arts center that will include an 850-seat theater. The Project will be built on a 70,912 square-foot (1.64-acre) site located south of Wilshire Blvd between South Westlake Avenue and South Bonnie Brae Street in the City of Los Angeles, County of Los Angeles."

[4] The Subdivision Map Act (Gov. Code, § 66410 et seq.) defines the term "advisory agency" as "a designated official or an official body charged with the duty of making investigations and reports on the design and improvement of proposed divisions of real property, the imposing of requirements or conditions thereon, or having the authority by local ordinance to approve, conditionally approve or disapprove maps." (Gov. Code, § 66415.) The Director of Planning is the advisory agency for the City of LA, and he or she is "authorized to act in such capacity through one or more deputies who are appointed by him for that purpose." (L.A. Mun. Code (LAMC), § 17.03.)

[5] In describing the action a government official or entity takes with respect to a CEQA document, the statutes and case law use slightly different terms depending on the particular context. For example, section 21151, subdivision (c) mentions a decision-making body's "certification, approval, or determination." Similarly, while the Guidelines discuss "adoption" or "approval" of an MND (See Guidelines, §§ 15074, 15075), the city's NOD states that the Agency

Project.  A 30-page determination letter memorializing the Agency's actions noted that any appeal must be filed with the City Planning Commission (Planning Commission) within 10 calendar days from the decision date, and that there may be time limits which affect the availability of judicial review.  There is nothing in the record to show that the Coalition took any action to appeal or challenge any of the actions taken by the Agency on March 3, 2017.

On March 15, 2017, the City filed a Notice of Determination (NOD) advising the public that on March 3, 2017, the Agency had approved the Tract Map, certified the MND, and determined that mitigation measures were made a condition of project approval.  The NOD also stated that an MND was prepared for the Project pursuant to CEQA, the MND could be examined at the Planning Department, and findings were made pursuant to CEQA.  The NOD included the following language at the top:  "Public Resources Code Section 21152(a) requires local agencies to submit this information to the County Clerk.  The filing of this notice starts a 30-day statute of limitations on court challenges to the approval of the project pursuant to Public Resources Code Section 21167."  There is nothing in the record to show that the Coalition took any action within 30 days of the

---

"certified" the MND.  In this opinion, we intend no distinction between the terms certified, adopted, approved, or determined when describing the action taken by a public agency or decision-making body.

5

NOD's March 15, 2017 filing date to challenge approval of the Tract Map or the validity of the CEQA determinations.

On October 12, 2017, the Planning Commission found the Project was assessed in the March 3, 2017 MND, and no subsequent environmental impact report (EIR), negative declaration, or addendum was required. The Planning Commission approved conditional use permits and made other approvals relating to the Project. A determination letter showed a mailing date of November 1, 2017, with an appeals deadline of November 21, 2017.

Around November 21, 2017, two tenants of an existing building on the Project site appealed the Planning Commission's decision. The City Council denied the appeals on January 31, 2018. At the same meeting, the City Council adopted a resolution approving general plan amendments in connection with the Project.

*The Coalition's CEQA challenge*

On March 2, 2018, the Coalition filed a petition for writ of mandamus, challenging the approval of the MND as violating CEQA. The Coalition complained the City "failed to disclose, analyze, and mitigate the Project's significant adverse environmental impacts in multiple areas, including aesthetic, cultural, land use, noise, traffic, and air quality impacts, as well as the cumulative impacts caused by allowing exceptions and increases in density beyond the limits allowed by the City." The Coalition further claimed

6

that the City's mitigation measures were inadequate, and that an EIR was required in light of the Project's significant effects on the environment.

The City and Real Parties in Interest filed a demurrer and a request for judicial notice. The Coalition filed an opposition and its own request for judicial notice.

On August 20, 2018, the superior court sustained the demurrer on the grounds that the Coalition's claims were time-barred under CEQA for failure to seek writ relief within 30 days after the NOD was filed on March 15, 2017, and that the Coalition had failed to exhaust administrative remedies. The court denied leave to amend. The Coalition appealed.

## DISCUSSION

The Coalition filed its petition for writ of mandate on March 2, 2018, almost a full year after March 15, 2017, the date on which the City of LA's NOD triggered a 30-day statute of limitations under section 21167, subdivision (b). The Coalition's CEQA claims are time-barred because they were filed more than 30 days after the City of LA filed a facially valid NOD. To the extent the Coalition argues on appeal that the Agency lacked authority to make any determinations under CEQA or lacked authority to approve the project, while such claims could have been considered as part of a timely action, they are also time-barred.

7

## 1. Standard of review

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' [Citation.] We may also consider matters that have been judicially noticed. [Citations.] '"A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Green Foothills*).)

## 2. CEQA overview

"CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay*

8

*Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)

To implement these goals, CEQA requires state and local government agencies to first determine whether a proposed activity is a project subject to CEQA, and then to determine whether the project is exempt from CEQA or requires some form of a CEQA document, whether that be an EIR, a negative declaration, or an MND. (See generally *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1185–1187; *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 944–945.) An EIR is "an informational document," the purpose of which "is to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project." (§ 21061.) "A negative declaration is 'a written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment and does not require the preparation of an environmental impact report.' (§ 21064.) An MND is 'a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plans or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the

9

effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment.' (§ 21064.5.)" (*Clews Land & Livestock, LLC v. City of San Diego* (2017) 19 Cal.App.5th 161, 183–184 (*Clews*).)

When a local agency "approves or determines to carry out a project" subject to CEQA, it must file with the county clerk's office a NOD within five working days of the approval or determination. (§ 21152, subd. (a); Guidelines, § 15075, subd. (a); cf. *Green Foothills, supra,* 48 Cal.4th at p. 56, fn. 17 [noting that even in a discretionary context, filing an NOD confers the benefit of a 30-day statute of limitations].) If the agency adopts an MND, the agency's NOD must include a number of items, including but not limited to, an identification of the project, a statement that the MND was adopted pursuant to the provisions of CEQA, a statement indicating whether mitigation measures were made a condition of the approval of the project, and the identity of the person who is either undertaking a project supported in some way by a public agency or receiving a permit or other entitlement from a public agency. (Guidelines, § 15075, subd. (b).) "The NOD plays a crucial role in determining the period during which CEQA challenges may be brought." (*Green Foothills*, *supra*, 48 Cal.4th at p. 43.)

10

### 3. CEQA statute of limitations

Statutes of limitations are designed "to prevent stale claims, give stability to transactions, protect settled expectations, promote diligence, encourage the prompt enforcement of substantive law, and reduce the volume of litigation." (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 499 (*Stockton*).) When a plaintiff files suit under CEQA to challenge a project approval, the applicable statutes of limitations are "unusually short." (Guidelines, § 15112, subd. (a).) "In enacting and amending section 21167, the Legislature clearly sought to place strict limits on the time during which projects may be challenged under CEQA." (*Green Foothills*, *supra*, 48 Cal.4th at p. 50 [reviewing legislative history and policy reasons for promoting prompt resolution of CEQA challenges].) "The shortest of all CEQA statutes of limitations [i.e., 30 or 35 days] applies to cases in which agencies have given valid public notice, under CEQA, of their CEQA-relevant actions or decisions. The filing and posting of such a notice alerts the public that any lawsuit to attack the noticed action or decision on grounds it did not comply with CEQA must be mounted immediately." (*Stockton*, *supra*, at p. 488.)

CEQA specifically requires that any lawsuit alleging CEQA noncompliance must be filed within 30 days after a facially valid NOD is filed. (§ 21167, subds. (b), (c) & (e); Guidelines, § 15112, subd. (c)(1); *Green Foothills*, *supra*, 48

11

Cal.4th at p. 46 ["[t]he language of section 21167 strongly suggests that the Legislature intended the filing of an NOD to trigger a 30–day statute of limitations"].) If an agency files a notice of exemption (NOE), then a 35-day statute of limitations applies. (§ 21167, subd. (d); Guidelines, § 15112, subd. (c)(2); *Stockton*, *supra*, 48 Cal.4th at pp. 498–499.) If a public agency does not file either an NOD or an NOE, a 180-day statute of limitations begins to run on "the date of the public agency's decision to carry out or approve the project." (§ 21167, subd. (a); Guidelines, § 15112, subd. (c)(5)(A).)

The California Supreme Court has made clear that the filing of a facially valid notice[6] starts the running of the statute of limitations, even where the underlying CEQA determinations may be flawed. "If a valid NOD has been filed (§§ 21108, subd. (a), 21152, subd. (a)), *any* challenge to that decision under CEQA must be brought within 30 days, regardless of the nature of the alleged violation. The statutory language does not authorize an extension of this 30-day period if the suit alleges that, despite the filing of an NOD, the project was approved without a prior environmental assessment." (*Green Foothills*, *supra*, 48

---

[6] The case law in this area examines the timeliness of actions, regardless of whether the statute of limitations was triggered by an NOD or an NOE. (See, e.g., *Green Foothills*, *supra*, 48 Cal.4th at p. 43 ["The NOD plays a crucial role in determining the period during which CEQA challenges may be brought."]; *Stockton*, *supra*, 48 Cal.4th at p. 505 [a properly filed and facially valid NOE triggers the 35-day period for challenging agency action].)

Cal.4th at p. 48; see also *Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1591.)  In *Stockton*, the Court described the distinction between a challenge to a decision under CEQA and a challenge to the validity of an NOE:  "Here we must decide whether . . . a facially valid and properly filed NOE, stating that a public agency has approved a project under a CEQA exemption, automatically triggers the 35-day statute of limitations for CEQA challenges to the approval process, or whether, . . . flaws in the approval process itself negate the resulting NOE, which therefore cannot cause the 35-day limitations period to begin." (*Stockton, supra,* 48 Cal.4th at p. 501.)  In concluding that the plaintiff's claims were barred because they were filed more than 35 days after the NOE was filed, the *Stockton* court explained that plaintiffs' argument "confuses the *timeliness* of a lawsuit with its *merits.*  Such an approach is contrary to the principle . . . that a statute of limitations applies regardless of the merits of the underlying lawsuit." (*Ibid.*)  The court was also unpersuaded by what it described as plaintiffs' "circular premise that a limitations period to challenge the validity of an agency decision is inapplicable if the agency decision is invalid." (*Id.* at p. 501, fn. 10.)

Prior authorities recognize only two situations where an NOD would not trigger the statute of limitations.  First, the statute of limitations does not commence if the NOD is invalid on its face because the information required by the Guidelines is missing or incorrect.  For example, in *Sierra*

13

*Club v. City of Orange* (2008) 163 Cal.App.4th 523, 532, after an initial NOD gave the wrong date for project approval, the city filed a second, amended NOD correcting the error. The court correctly reasoned that the first NOD did not trigger the 30-day statute of limitations, because it was substantially defective and did not comply with Guidelines' requirement to include the approval date. Because plaintiffs filed their complaint within 30 days after the second, corrected NOD was filed, their claims were timely. In *Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429, the court found an NOD ineffective to trigger the 30-day statute of limitations because the project description failed to disclose a 15-foot increase in the building's height, and so the public had not received formal notice of that fact. Instead, the 180-day statute of limitations period applied, and began on the date that members were first informed of the height increase. (*Id.* at pp. 432, 436.)

Second, an NOD or NOE does not trigger the statute of limitations if it is filed before a decision-making body has approved the project. In *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 963 (*Amador*), the respondent water agency first adopted a resolution in December 1994 authorizing negotiations for purchasing a water project. It filed an NOE in April 1995, but it did not take steps to purchase the project until September 1995. Reasoning that the December 1994 resolution did not constitute "approval" under the CEQA

14

guidelines, the court held that the April 1995 NOE was invalid because it preceded project approval. (*Amador,* at pp. 962–965.) In *Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408 (*Visalia*), the court relied on *Amador* to conclude that an NOE, filed by the city five days before any arguable project approval, was ineffective to trigger the 35-day statute of limitations. (*Id.* at pp. 416, 418.)

### 4. The Coalition's challenge was untimely

Application of the statute of limitations bar to the Coalition's petition is straightforward. On March 3, 2017, the Agency certified an MND under CEQA and approved the Tract Map. On March 15, 2017, the City of LA filed an NOD informing the public of the Agency's CEQA determination and the project approval. The Coalition did not bring an action within 30 days, but rather waited almost a year before filing its petition on March 2, 2018, challenging the MND as violating CEQA.

The Coalition does not, and could not, make any credible argument that the NOD issued on March 15, 2017 was defective for failing to include or accurately state all of the information required by the Guidelines. Consistent with Guidelines section 15075, subdivision (b), the NOD here included an accurate identification and description of the Project, the identities of the lead agency and project applicant, the date of project approval, required statements

15

of findings regarding the effect of the Project on the environment, a statement of the need for mitigation measures as a condition of project approval, and the address where the relevant project approvals could be examined. Nor does the Coalition make a credible argument that the Agency's CEQA determination preceded its project approval: the Agency certified the MND and approved the Tract Map on March 3, 2017.

Having failed to fit into a recognized exception to the rule that a properly filed NOD triggers a 30-day statute of limitations, the Coalition makes a number of arguments purporting to attack the validity of the NOD based on Agency's authority to make CEQA findings, including that: (1) the Planning Commission (and not the Agency) had responsibility under the municipal code for initial project approval and the associated CEQA review; (2) even if the Agency had authority to approve the Tract Map, it had no express authority from the municipal code to make CEQA findings; (3) the Agency's CEQA decisions were not properly appealable to an elected body, as required by CEQA; and (4) authority to approve the Project, if vested with the Agency, was improperly separated from authority for CEQA approval, which was vested with the City Council. In making these arguments, the Coalition "confuses the *timeliness* of a lawsuit with its *merits*." (*Stockton, supra*, 48 Cal.4th at p. 501.) We are not persuaded by the Coalition's arguments that the Agency's decision-making authority, or the structure of the Project and CEQA approvals, impacts

16

our analysis of whether the NOD triggered the statute of limitations.

Indeed, the Coalition's arguments here attacking the authority of the Agency are strikingly similar to the arguments rejected by the Supreme Court in *Stockton.* The plaintiffs in *Stockton* challenged the authority of the city's director of community development to determine that the construction project at issue was exempt under CEQA. The *Stockton* court concluded that even if there were flaws in the decision-making process, a facially valid and properly-filed NOE would trigger the statute of limitations. (*Stockton, supra,* 48 Cal.4th at pp. 489, 505.) In rejecting plaintiffs' argument that an NOE does not trigger the statute of limitations unless the agency "validly" approved a project, the court explained that such an approach "would circumvent the clear legislative policy that the shortened limitations periods for CEQA challenges should apply whenever an agency has given *public notice* of its CEQA-related actions or determinations." (*Id.* at p. 504.) The court further noted that any arguments challenging the director's actions, including even "misuse" of his authority, could be made as part of a lawsuit that was filed within the limitations period. (*Id.* at p. 507.)

The same can be said of the Coalition's contentions here: to the extent the Coalition sought to challenge the Agency's authority to make initial approvals or adopt the MND, the arguments could be entertained as long as the claims were made within 30 days after the City of LA filed

17

an NOD advising the public of the project approval and CEQA determination.  To the extent the decision in *Amador, supra,* 76 Cal.App.4th at pages 962–965, could be read to hold otherwise, we question the continued viability of that portion of the decision, in light of the Supreme Court's statement in *Stockton* that "persons seeking to challenge an agency decision on CEQA grounds may not, for purposes of the statute of limitations, go behind the agency's declaration in an NOE that it *has* approved a project.  Instead, they must bring their action within 35 days after the NOE is filed and posted.  Nor does this mean that the agency may therefore file an NOE *in advance* of an actual project approval, then proceed unmolested to approve the project at its leisure, free of environmental challenges.  In a suit brought within 35 days after the filing of the NOE, litigants are free to argue *on the merits* that the NOE did not comply with CEQA, in that it did not follow a valid project approval."  (*Stockton*, *supra*, 48 Cal.4th at p. 501, fn. 10.)  The same reasoning applies to an NOD, which carries a 30-day limitations period.  (§ 21167, subds. (b), (c) & (e); Guidelines, § 15112, subd. (c)(1).)  In any event, *Amador* is inapposite because it dealt with an agency action taking only preliminary steps toward a possible future project approval, not a purportedly defective project approval as alleged here.  (*Stockton*, *supra*, 48 Cal.4th at p. 508 ["Whatever the merits of [the *Amador* court's] reasoning, it is inapplicable to the instant case"].)[7]

_____

[7] The *Visalia* court rejected the argument that the

18

Further, the Coalition's reliance on *Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340 (*L Street*) and *California Clean Energy Committee v. City of San Jose* (2013) 220 Cal.App.4th 1325 (*Clean Energy*) underscores its fundamental—and ultimately fatal—error of raising substantive arguments in an untimely lawsuit. Both *L Street* and *Clean Energy* explore substantive questions about a decision-making body's authority, but the plaintiffs brought their claims within the limitations period.[8]

intervening decision by the California Supreme Court in *Stockton* had narrowed the grounds for invalidating an NOE, concluding that *Amador* "remains good law insofar as it held that a notice of exemption filed before actual project approval is invalid and does not trigger the 35-day limitations period." (*Visalia, supra*, 209 Cal.App.4th at p. 425.) We disagree with *Visalia*'s conclusion, and conclude *Stockton* at a minimum limited the application of *Amador* to facts involving preliminary steps toward project approval.

[8] In *L Street*, the City of Fresno filed an initial NOD after the city's historic preservation commission approved an MND and a demolition permit. The city council considered plaintiff's timely appeal, which raised the issue of the preservation commission's authority to make CEQA determinations. The city council upheld the preservation commission's actions and filed another NOD stating that the city council had "considered and 'upheld'" the preservation commission's earlier action. Plaintiff then filed a timely appeal from the second NOD. (*L Street, supra*, 229 Cal.App.4th at pp. 351–352.) In *Clean Energy*, one of the issues on appeal was whether the city of San Jose had

19

Because the Coalition did not sue in a timely manner, they are precluded from raising substantive arguments about the Agency's scope of authority.

---

properly delegated authority for final EIR certification to the planning commission, or whether the planning commission's role was just advisory. The city did not file an NOD, but plaintiff filed its petition for writ of mandate three days after the city council adopted a resolution certifying the EIR, and so the question of compliance with the statute of limitations was never raised as an issue. (*Clean Energy*, *supra*, 220 Cal.App.4th at pp. 1332–1335.)

## DISPOSITION

The trial court's ruling sustaining the demurrer without leave to amend is affirmed. Plaintiff and appellant Coalition for an Equitable Westlake/Macarthur Park is ordered to pay costs on appeal to respondents City of Los Angeles, Los Angeles City Council, and Los Angeles Department of City Planning, and real parties in interest Adrian Jayasinha and the Walter and Aeshea Jayasinghe Family Trust.

MOOR, J.

We concur:

RUBIN P. J.

BAKER, J.