Filed 10/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAVE BERKELEY'S NEIGHBORHOODS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>      Defendants and Respondents;<br><br>COLLEGIATE HOUSING FOUNDATION,<br><br>      Real Party in Interest and Appellant. | A160560<br><br>(Alameda County<br> Super. Ct. No. RG19022887) |
| SAVE BERKELEY'S NEIGHBORHOODS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>      Defendants and Respondents;<br><br>AMERICAN CAMPUS COMMUNITIES et al.,<br><br>      Real Parties in Interest and Appellants. | A160561<br><br>(Alameda County<br> Super. Ct. No. RG19022887) |

Save Berkeley's Neighborhoods (SBN) filed a petition for writ of mandate pursuant to the California Environmental Quality Act (Pub. Resources Code,[1] § 21000 et seq.; CEQA) challenging a proposed project to develop new academic, residential, and parking buildings on University of California Berkeley's campus. The trial court found SBN failed to timely serve its petition on American Campus Communities, American Campus Communities Services, Inc., American Campus Communities Partnership, L.P. (jointly, ACC), and Collegiate Housing Foundation (CHF) (jointly, appellants), and sustained their demurrer without leave to amend. However, the court declined to dismiss the petition because it concluded appellants were not indispensable parties. Appellants subsequently appealed the finding they are not indispensable parties, and SBN filed a cross-appeal arguing the trial court erred in concluding it failed to name and serve appellants within the applicable statute of limitations. We affirm the order.[2]

---

[1] All statutory references are to the Public Resources Code unless otherwise noted.

[2] Pending before this court are five requests for judicial notice. On November 17, 2020, appellants filed a request for judicial notice of the notice of determination, various documents regarding review of the project, excerpts from the final supplemental environmental impact report prepared in connection with the project, various documents regarding the legislative history of Assembly Bill No. 320 (2011–2012 Reg. Sess.), and SBN's motion for leave to file a second amended petition. SBN objects to two of the exhibits attached to appellants' first request for judicial notice: (1) text changes to the draft supplemental environmental impact report, and (2) excerpts from the final supplemental environmental impact report. On March 11, 2021, appellants filed a second request for judicial notice of certain CEQA findings. On September 14, 2021, appellants filed a third request for judicial notice of certain court filings in *City of Berkeley v. Regents of the University of California* (Super. Ct. Alameda County, No. RG19023058) and *Save Berkeley's Neighborhoods v. Regents of the University of California* (Super. Ct. Alameda County, No. RG19022887). SBN also objects to appellants' second and third requests for judicial notice. We grant in part appellants' first

# I. BACKGROUND

The Regents of the University of California (Regents) approved a new development for additional academic space and campus housing, and certified a final supplemental environmental impact report (SEIR). The project would demolish an existing parking structure and construct apartment housing above a new parking structure and a new academic building adjacent to the new residential building (project). On May 17, 2019, the Regents filed a notice of determination (NOD) regarding the project, which identified American Campus Communities and CHF as the parties undertaking the

---

request for judicial notice as to exhibits E through I, and grant in full appellants' second and third requests for judicial notice. (Evid. Code, §§ 452, subds. (b)–(d), 459, subd. (a).) We deny appellants' request for judicial notice of exhibits A, B, C, and D, because those documents were part of the record before the trial court and are included in the record on appeal. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 632, fn. 11.)

On February 9, 2021, SBN filed a request for judicial notice of seven exhibits related to the administrative record lodged in the trial court, a petition filed in a related case, *City of Berkeley v. Regents of the University of California* (Super. Ct. Alameda County, No. RG19023058), and an opinion by this court from a prior appeal between the parties, *Save Berkeley's Neighborhoods v. Regents of University of California* (2020) 51 Cal.App.5th 226. The request for judicial notice also asks this court to take judicial notice of nine documents that were before the trial court and are included in the joint appendix. On April 12, 2021, SBN filed a second request for judicial notice regarding two pleadings filed with the lower court following its order sustaining the demurrers and excerpts of the administrative record lodged with the trial court. Appellants do not oppose either request. We grant in part SBN's first request for judicial notice as to exhibits 1 through 7, and grant in full SBN's second request for judicial notice. (Evid. Code, §§ 452, subds. (c), (d), 459, subd. (a).) We deny SBN's request for judicial notice of the joint appendix documents as unnecessary because the documents were part of the record before the trial court and are included in the record on appeal. (*Davis v. Southern California Edison Co.*, *supra*, 236 Cal.App.4th at p. 632, fn. 11.)

project. American Campus Communities is the developer for the project, and CHF is the ground lessee and borrower in connection with the housing component of the project.

SBN notified the Regents it intended to challenge its adoption of the project and certification of the SEIR. On June 13, 2019, SBN filed a petition for writ of mandate seeking to vacate the Regents' certification of the SEIR on the grounds that the approval violated CEQA. The petition identified various alleged omissions from the SEIR. The petition further asserted the Regents "[f]ailed and refused to recirculate a revised draft supplemental EIR including said necessary information," failed to prepare and certify "a subsequent, rather than supplemental EIR," and failed to make certain required findings or support findings with substantial evidence. The petition named the Regents, Janet Napolitano, as president of the University of California, and Carol T. Christ, as chancellor of University of California, Berkeley, as respondents in the action.

On September 18, 2019, SBN filed a first amended petition for writ of mandate. That petition was substantively identical to the initial petition, except it added American Campus Communities and CHF as real parties in interest. The amended petition acknowledged American Campus Communities and CHF were listed as the parties undertaking the project in the NOD, and thus were being named pursuant to section 21167.6.5, subdivision (a) (section 21167.6.5(a)).[3] SBN subsequently filed a first amendment to the first amended petition for writ of mandate, seeking to add

---

[3] Section 21167.6.5(a) provides: "The petitioner or plaintiff shall name, as a real party in interest, the person or persons identified by the public agency in its notice filed pursuant to subdivision (a) or (b) of Section 21108 or Section 21152 . . . ."

4

American Campus Communities Services, Inc. and "American Campus Communities Operating Partnership LP" as real parties in interest.

ACC and CHF filed demurrers in response to the amended petition. They asserted SBN failed to name them as parties within the applicable statute of limitations, section 21167.6.5(a) requires their joinder as real parties in interest, and they are necessary and indispensable parties to the litigation. Because these defects could not be cured, appellants requested the court sustain the demurrer without leave to amend and dismiss the entire action.[4] SBN opposed these demurrers.

Following a hearing on the matter, the trial court sustained the demurrers without leave to amend. The court noted the Regents' NOD identified American Campus Communities and CHF as the parties undertaking the project, and SBN failed to name and serve them within either section 21167's 30-day limitations period or section 21167.6.5(a)'s 20-day limitations period. The court then applied the factors set forth in Code of Civil Procedure section 389, subdivision (b) (CCP section 389(b))[5] and

_____

[4] The Regents also requested the trial court dismiss the action with prejudice for the same reasons set forth in appellants' demurrers. However, that demurrer is not part of the pending appeal.

[5] CCP section 389(b) provides if certain necessary parties cannot be joined in an action, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (Code Civ. Proc., § 389, subd. (b); see also part II.B.3., *post*.)

5

concluded the Regents, ACC, and CHF were closely aligned because ACC and CHF were "undertaking the project for the University's own use and benefit." The court noted SBN would have no way to challenge the SEIR if the case was dismissed, whereas ACC and CHF were parties in a related case challenging the same SEIR and thus unlikely to be subject to a harmful settlement. The court thus concluded ACC and CHF were not indispensable parties, dismissed ACC and CHF, but declined to dismiss the entire matter. ACC and CHF timely appealed. SBN subsequently filed a cross-appeal.

## II. DISCUSSION

Appellants contend the trial court erred by applying the equitable balancing test set forth in CCP section 389(b). They assert their designation as real parties in interest under section 21167.6.5 required the conclusion that they are necessary and indispensable parties to the litigation. Appellants further argue even if the trial court properly applied CCP section 389(b), the factors demonstrate they are indispensable parties to the litigation. In response, SBN argues the order sustaining appellants' demurrer is not appealable. SBN further asserts, via a cross-appeal, the trial court erred in concluding SBN did not join appellants within the applicable statute of limitations. We disagree with both parties' positions.

### A. Appealability

As a threshold issue, SBN argues the appeal must be dismissed because it arises from an interlocutory order. SBN argues the issue of whether appellants are indispensable parties "remain[s] in the underlying action" because the same issue was raised by the Regents, who remain a party to the action.

"In multiparty actions, a judgment disposing of all the issues as to one party is appealable even if issues remain as to other parties." (*Martis Camp*

6

*Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 588; *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880 (*Tinsley*) ["when there is a . . . judgment resolving all issues between a plaintiff and one defendant, either party may appeal from an adverse judgment, although the action remains pending between the plaintiff and other defendants"].) This exception to the final judgment rule applies even if some of the legal issues related to the dismissed parties are identical to those remaining in the action among other parties. (*Tinsley*, at pp. 880–881 [rejecting contention that the exception to the final judgment rule does not apply because the legal issues raised and relief sought by the remaining party were identical to those raised and sought by the appealing parties]; accord *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 578 [rejecting contention that "entry of judgment in favor of defendants was improper because they are indispensable parties whose interests are identical to those of the remaining defendants"].)

SBN relies on *Call v. Alcan Pacific Co.* (1967) 251 Cal.App.2d 442 (*Alcan*) to argue this exception to the final judgment rule does not apply here because the *interests* of CHF and ACC are identical to those of the Regents. In *Alcan*, the court considered whether an early dismissal of a surety fell within the multiparty exception to the final judgment rule. (*Id.* at pp. 448–449.) In concluding the exception did not apply, the court noted the principal and surety had "such a unity of interest between them that a judgment in favor of the latter alone is not a final judgment from which an appeal lies." (*Id.* at p. 449.) It explained "suits on bonds" constituted "a 'special class of cases' " because the bond "bound principal and surety jointly and severally." (*Id.* at p. 449, fn. 11.) While CHF, ACC, and the Regents may have similar

7

interests in the project and this litigation, it is in no way analogous to the unity in *Alcan*.

Here, the trial court's order sustaining CHF's and ACC's demurrers disposed of all issues between them and SBN, and CHF's and ACC's appeal does not violate the final judgment rule. We thus turn to the merits of the appeal.

## B. Necessary and Indispensable Parties

The parties do not dispute appellants are necessary parties pursuant to section 21167.6.5(a). At issue, however, is whether they are indispensable under the current statutory scheme. If ACC and CHF are found to be indispensable parties, then the entire action must be dismissed. (See *Beresford Neighborhood Assn v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1190 (*Beresford*).) If they are not indispensable, then the court may allow the action to proceed. (Code Civ. Proc., § 389, subd. (b).)

### 1. Standard of Review

"Our overriding purpose in construing a provision of CEQA, as with any statute, is 'to adopt the construction that best gives effect to the Legislature's intended purpose.' [Citation.] In determining that intended purpose, we follow '[s]ettled principles.' [Citation.] 'We consider first the words of a statute, as the most reliable indicator of legislative intent.' [Citation.] In doing so, we give the words 'their usual and ordinary meaning,' viewed in the context of the statute as a whole. [Citation.] As part of this process, ' " '[every] statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " ' [Citation.] [¶] When the language of a statute is ambiguous—that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the

8

context of the statute as a whole—we consult other indicia of the Legislature's intent, including such extrinsic aids as legislative history and public policy." (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183–1184.)

### 2. Indispensability Under Sections 21108 and 21167.6.5

The NOD identified American Campus Communities and CHF as the entities "Undertak[ing] [the] Project." At issue is whether that designation supplants the equitable balancing test in CCP section 389(b) and creates a presumption of indispensability. We conclude it does not.

### a. Assembly Bill No. 320

Prior to 2012, section 21108 did not require a lead agency to identify any real parties in interest. (Stats. 2004, ch. 525, § 2, p. 4154.) However, former section 21167.6.5, subdivision (a) required real parties in interest to be named and served in certain actions: "The petitioner or plaintiff shall name, as a real party in interest, any recipient of an approval that is the subject of an action or proceeding brought pursuant to Section 21167, 21168, or 21168.5, and shall serve the petition or complaint on that real party in interest . . . not later than 20 business days following service of the petition or complaint on the public agency." (Stats. 2004, ch. 522, § 1, p. 4139.)

The phrase "any recipient of an approval" was not defined by statute. Courts thus were required to "first determine what approval is 'the subject of' that action" and then "determine whether that person or entity can be deemed a recipient of that approval." (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 850.)

In response to this ambiguity, the Legislature passed Assembly Bill No. 320 (2011–2012 Reg. Sess.) (Assembly Bill 320), which amended in relevant part sections 21108 and 21167.6.5. (Stats. 2011, ch. 570, §§ 1, 3.)

9

The Senate floor analysis explained the purpose of the bill was to "clarif[y] the persons who must be named as a real party in interest." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011, p. 1.) Accordingly, the Legislature amended section 21108, subdivision (a) (section 21108(a)), to require state agencies to "identify the person or persons in subdivision (b) or (c) of Section 21065, as reflected in the agency's record of proceedings . . . ." in any filed notice of determination.[6] (Stats. 2011, ch. 570, § 1.) Similarly, the Legislature amended section 21167.6.5(a) to replace the phrase "any recipient of an approval" with "the person or persons identified by the public agency in its notice filed pursuant to subdivision (a) or (b) of Section 21108 . . . or, if no notice is filed, the person or persons in subdivision (b) or (c) of Section 21065, as reflected in the agency's record of proceedings for the project." (Stats. 2011, ch. 570, § 3.)

### b. Analysis[7]

Appellants argue Assembly Bill 320 sought to provide " 'finality and certainty' " as to who must be joined in CEQA actions. They assert the trial

---

[6] The relevant portions of section 21065 provide: "(b) An activity undertaken by a person which is supported, in whole or in part, through contracts, grants, subsidies, loans, or other forms of assistance from one or more public agencies. [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065, subds. (b)–(c).)

[7] Appellants address and raise independent arguments with respect to sections 21108 and 21167.6.5. However, we note section 21108, standing alone, merely addresses what information lead agencies must include in a notice of determination. It does not address actions relating to such notices or issues of joinder. Section 21108 is only relevant to this dispute because section 21167.6.5(a) incorporates the entities identified in the NOD pursuant to section 21108 as the "real part[ies] in interest" who must be named and served in certain actions. Accordingly, we analyze both statutes together.

10

court's decision to utilize CCP section 389(b)'s equitable balancing test undermines this purpose.

We first look to the plain language of the statute for guidance. (*Union of Medical Marijuana Patients, Inc. v. City of San Diego*, *supra*, 7 Cal.5th at p. 1184.) Appellants contend that where the Legislature creates a statutory framework for initiating actions against state agencies, the suit must be brought under those conditions imposed by the Legislature. They assert "[t]he Legislature clearly intended dismissal as the sanction for failure to comply with Section 21167.6.5."

The statute does not support appellants' interpretation. Nothing in section 21167.6.5(a) states an action against a lead agency must be dismissed for failure to properly name and serve the real parties in interest. While section 21167.6.5(a) uses the word "shall," it only requires that parties "shall" file and serve the real parties in interest within a limitations period. (§ 21167.6.5, subd. (a).) Failure to do so excludes the real parties in interest from the action. The statutory language does not expressly condition a petitioner's ability to bring suit upon the inclusion of the real parties in interest. (See *ibid.*) Likewise, the cases upon which appellants rely are distinguishable. Those cases involve, for example, a failure to file an action against a lead agency within the statute of limitations or a failure to file a claim with a state board prior to filing suit. (See, e.g., *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 57; *Lattin v. Franchise Tax Board* (1977) 75 Cal.App.3d 377, 382.) Here, the issue is SBN's failure to name and serve the real parties in interest, not the lead agency, within the applicable statute of limitations. And none of the cases upon which appellants rely address the key question: whether an action against a lead agency must be dismissed—despite being filed within

11

the limitations period—because of a failure to do so for necessary third parties.

Nor does subdivision (d) of section 21167.6.5 support appellants' position. Section 21167.6.5, subdivision (d) states: "Failure to name potential persons, other than those real parties in interest described in subdivision (a), is not grounds for dismissal pursuant to Section 389 of the Code of Civil Procedure." Contrary to appellants' argument, section 21167.6.5, subdivision (d) recognizes courts will apply the equitable balancing test under CCP section 389(b). For persons who are not real parties in interest, section 21167.6.5, subdivision (d) states dismissal under CCP section 389(b) is inappropriate. However, it does not state dismissal is mandatory for those who are real parties in interest. Rather, subdivision (d) implies the failure to name real parties in interest *may* be grounds for dismissal depending on the factors set forth in CCP section 389(b).

Because the statutory text is silent as to the impact on a party's failure to name and serve the real parties in interest, we turn to the legislative history for guidance. Assembly Bill 320 did not alter the requirement that petitioners challenging certain projects must name and serve the real parties in interest. (Compare former § 21167.6.5, subd. (a), Stats. 2004, ch. 522, § 1, with § 21167.6.5, subd. (a).) However, prior to Assembly Bill 320 the real parties in interest were defined as "any recipient of an approval." (Stats. 2004, ch. 522, § 1, p. 4139.) The phrase "any recipient of an approval" was not defined in either CEQA or its implementing administrative regulations (CEQA Guidelines), and parties and courts were left to independently assess what entities qualified. (See, e.g., *Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at pp. 850–855 [in assessing various agreements between two water districts and an irrigation district, the court

12

concluded the United States and various Indian tribes were recipients of approval for purposes of § 21167.6.5]; *County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 33 (*County of Imperial*) [addressing whether two water districts with the right to a possible future acquisition of water were recipients of approval].)

Under the pre-Assembly Bill 320 statutory scheme, courts engaged in a two-part analysis. First, they needed to determine who constituted a real party in interest—i.e., who was a "recipient of an approval." (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 850.) Resolving this question often involved numerous sub-questions. For example, in *Quantification Settlement Agreement Cases*, the court first examined "what [project] 'approval' is to be deemed the subject of that action" because "[o]nly then can we determine who the recipients of that approval were for purposes of section 21167.6.5(a)." (*Id.* at pp. 850, 851.) The court then analyzed whether the parties at issue should be deemed "recipients" of the identified approval. (*Id.* at pp. 854–855.) Courts did not employ Code of Civil Procedure section 389, subdivision (a) (CCP section 389(a)) as part of this analysis. Rather, as explained in *Quantification Settlement Agreement Cases*, section 21167.6.5(a) supplanted CCP section 389(a). "If an entity is a recipient of an approval for purposes of section 21167.6.5(a), that entity is a necessary party in a CEQA action challenging the EIR for the project that was approved, and no further showing need be made under subdivision (a) of Code of Civil Procedure section 389 to make that entity a necessary party." (*Quantification Settlement Agreement Cases*, at p. 855.)

If courts concluded the entities were real parties in interest and thus deemed necessary parties, they then addressed the second part of the analysis: whether those real parties in interest were also indispensable.

13

(*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 855.)  To make this assessment, courts applied the equitable balancing test in CCP section 389(b).  (*Quantification Settlement Agreement Cases*, at p. 855.; *County of Imperial*, *supra*, 152 Cal.App.4th at p. 35.)  As the Third Appellate District explained, "[A] recipient of an approval, while a necessary party, is not necessarily an indispensable party, such that the CEQA action must be dismissed in the absence of that party.  Instead, if a court finds that 'unnamed parties received approvals, [the court must] then consider whether under Code of Civil Procedure section 389, subdivision (b) [the unnamed parties] qualify as indispensable parties, requiring dismissal of the action.' " (*Quantification Settlement Agreement Cases*, at p. 848.)

The legislative history indicates the Legislature amended sections 21108 and 21167.6.5 to clarify the first step of this process—i.e., who constituted a real party in interest.  As noted by the Legislature, *County of Imperial*, *supra*, 152 Cal.App.4th 13 highlighted the ambiguity regarding what parties must be named under former section 21167.6.5(a).  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011, pp. 3–4.)  Under former section 21167.6.5(a), petitioners could believe they had named all relevant parties, only to have a court conclude indispensable parties were not named and dismiss the petition.  (See, e.g., *County of Imperial*, *supra*, 152 Cal.App.4th at p. 40.)  The Legislature thus amended sections 21167.6.5(a) and 21108 to "provid[e] a bright-line rule as to which persons must be named [and served] in the CEQA complaint."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011, p. 3.)  The amendments to sections 21108 and 21167.6.5(a) defined the real parties in interest as "the person or persons in subdivision (b) or (c) of Section 21065" as

14

identified by the lead agency in its notice of determination or exemption. The Legislature enacted these amendments to eliminate any ambiguity regarding who must be named as a real party in interest.[8] (Concurrence in Sen. Amend., Assem. Bill 320, as amended June 14, 2011, pp. 2–3.)

What the Legislature did not do, however, was alter the second step— i.e., evaluating whether the real party in interest was indispensable to the action. In considering Assembly Bill 320, the Legislature discussed at length *County of Imperial*, *supra*, 152 Cal.App.4th 13. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011, pp. 3–4.) It noted the appellate court concluded the two water districts at issue "were 'recipients of approval,' indispens[a]ble parties, and that '[t]he trial court carefully balanced the various factors and determined, on balance, that equity was best served by dismissing the action for failure to name [the water districts].' " (*Id.* at p. 4.) But the Legislature then focused exclusively on the first item: identifying " 'recipients of approval' " by "removing references to 'recipients of approval,' and, instead, requiring specified persons to be named as real parties in interest . . . ." (*Ibid.*) The Legislature did not address that portion of *County of Imperial* that assessed indispensability under CCP section 389(b). (See generally, Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011; see also *County of Imperial*, *supra*, 152 Cal.App.4th at pp. 26, 35.)

---

[8] Appellants argue we must defer to a lead agency's determination for who constitutes a real party in interest. We need not address this point. Even assuming deference is required, at most it would be deference to who constitutes a necessary party. (See *Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 855.) Here, SBN does not argue ACC and CHF were not real parties in interest under section 21167.6.5(a).

15

In limiting its focus to clarifying the real parties in interest, the Legislature recognized the failure to name a real party in interest "*can* be grounds for dismissal"—but does not mandate dismissal—under existing law. (Concurrence in Sen. Amend., Assem. Bill 320, as amended June 14, 2011, p. 2, italics added; *ibid.* ["Under CEQA civil procedure laws, if a lawsuit does not name a recipient of an approval, the court must determine whether 'in equity and good conscience the action should proceed among the named parties, or should be dismissed without prejudice, the absent person being thus regarded as indispensable."].) Assembly Bill 320, when passed by the Assembly, included a provision that "[a]llowed a CEQA legal action to be dismissed if the petitioner or plaintiff fails to timely serve a recipient of an approval identified in the lead agency's NOD or NOE [(notice of exemption)]." (Concurrence in Sen. Amend., Assem. Bill 320, as amended June 14, 2011, p. 2.) However, the Senate amendments "[d]elete[d] the provision that allows a CEQA legal action to be dismissed for failure to serve the recipients of the lead agency's approval with the petition or complaint." (Concurrence in Sen. Amend., Assem. Bill 320, as amended June 14, 2011, p. 1.) "When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 196.)

Nor does the legislative history reflect any intent to limit CEQA actions or otherwise eliminate the CCP section 389(b) equitable balancing test for real parties in interest. To the contrary, the legislative history indicates the Legislature's intent was to "prevent the dismissal of important and meritorious CEQA cases." (Concurrence in Sen. Amend., Assem. Bill 320, as

16

amended June 14, 2011, p. 3.) The approach advocated by appellants would increase dismissal of CEQA cases.

In sum, we disagree the Legislature replaced the CCP section 389(b) balancing test with a presumption of indispensability when it enacted Assembly Bill 320. The trial court did not err in applying CCP section 389(b).

### 3. *CCP Section 389(b)'s Equitable Balancing Test*

Those entities deemed real parties in interest under section 21167.6.5(a) are considered necessary parties for purposes of Code of Civil Procedure section 389. (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 855 ["If an entity is a recipient of an approval for purposes of section 21167.6.5(a), that entity is a necessary party in a CEQA action challenging the EIR for the project that was approved, and no further showing need be made under subdivision (a) of Code of Civil Procedure section 389 to make that entity a necessary party."].) If a necessary party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (Code Civ. Proc., § 389, subd. (b).)

These factors "are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another." (*County of*

17

*Imperial*, *supra*, 152 Cal.App.4th at p. 35.)  However, "potential prejudice to that unjoined person is of critical importance."  (*Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1298.)  We review a trial court's order regarding whether to dismiss for failing to join an indispensable party for an abuse of discretion.  (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1179.)

Appellants argue they have fundamentally different interests from the Regents.  They note the Regents' interest is to add academic space and housing, whereas appellants' interest is to develop, build, manage, and operate the project.  They argue delays and additional mitigation could significantly impact appellants' financial interests while minimally impacting the Regents' goals, and any judgment would fail to reflect their unique interests.

Developers are often found to be indispensable parties in CEQA actions.  (See, e.g., *Beresford*, *supra*, 207 Cal.App.3d at pp. 1187–1190; *Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 499 (*Sierra Club*).)  But a developer is "not necessarily an indispensable party."  (See *Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 848.)  " 'Whether a party is . . . indispensable is a matter of trial court discretion in which the court weighs "factors of practical realities and other considerations." ' "  (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 84; accord *Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1106 (*Deltakeeper*) ["if a party to a contract were always indispensable in a suit to set aside the contract, it would eliminate the exercise of discretion accorded to the trial court under [Code of Civil Procedure] section 389, subdivision (b)"].)

18

Here, the record reflects a strong unity of interest between the Regents and appellants. While the parties' motivations may differ, both the Regents and appellants have similar interests in having the project proceed in a timely manner. (See *County of Imperial*, *supra*, 152 Cal.App.4th at p. 38 ["The test for determining the ability to protect an absent party's interest is whether existing and absent parties' interests are sufficiently aligned that the absent party's rights necessarily will not be affected or impaired by the judgment or proceeding."]; see also *Citizens for Amending Proposition L v. City of Pomona*, *supra*, 28 Cal.App.5th at p. 1184 [city "ha[d] an interest in the validity of an agreement to which it is a party. . . . It was not an abuse of discretion of the trial court to conclude from this interest that [the city] could 'be expected to argue vigorously in favor of' upholding the contract."].) The Regents noted the Goldman School of Public Policy (GSPP), which would obtain the additional academic space, was one of the university's leading programs and the new academic building would be "critical to ensure the ongoing success and sustainability" of GSPP. Likewise, the Regents deemed additional housing "a high priority" because the rising cost of housing negatively impacts the university's recruitment and the "campus community."

Nor, in this instance, does appellants' role in developing, building, managing, and operating the project create a distinct economic interest. While ACC would operate and manage the additional housing, the record indicates the Regents—specifically the UC Berkeley Parking and Transportation division and GSPP—would manage and operate the new parking structure and the new academic building. The Regents also would regain ownership of the project once the project debt was repaid. Finally, we note appellants have not cited to any evidence that would support their claim

19

that heightened costs caused by additional mitigation or delay would solely impact or be borne by them.

The cases cited by appellants to support their argument regarding their interests are distinguishable. Both *Sierra Club and Beresford* involved nonjoined developers in suits to set aside either building permits or zoning and planning approvals. (*Sierra Club*, *supra*, 95 Cal.App.3d at p. 498; *Beresford*, *supra*, 207 Cal.App.3d at p. 1185; accord *County of Imperial*, *supra*, 152 Cal.App.4th at p. 18 [petition challenging approval of agreement to transfer water to certain water districts].) Those courts concluded the developers were indispensable parties because the petitions challenged projects pursued by the developers which would have no meaningful involvement by the government agency apart from the initial approvals. (*Sierra Club*, at p. 498; *Beresford*, at p. 1189; see also *County of Imperial*, at p. 23 [State Water Resources Control Board's sole role was approving water transfer].) Similarly, in *Save Our Bay, Inc. v. San Diego Unified Port District* (1996) 42 Cal.App.4th 686 at page 693, the court found the nonjoined landowner was an indispensable party in a CEQA action. While the district authorized purchase of the land for the project, the court noted the district had no specific interest to ensure the purchase of the property and thus " 'cannot be expected to represent the [owner's] interests.' " (*Save Our Bay*, at p. 696.)

In these cases, the lead agency was neither an owner or developer of the project, and the unjoined entity had "undertaken the efforts necessary to secure such [governmental] approvals" for the project. (*Beresford*, *supra*, 207 Cal.App.3d at p. 1189.) Here, however, the Regents are not so removed from the project. As noted above, the Regents pursued the project and continued to have a vested interest in its success. The project is for the

20

benefit of the University of California, Berkeley, the Regents will be involved in the management and operation of two-thirds of the new buildings (i.e., the parking garage and the academic building), and it will obtain ownership of the project upon repayment of the project debt.

Moreover, appellants have not cited any evidence in the record to indicate they invested resources in the project that would be uniquely harmed.  While appellants argue a writ would inevitably be inconsistent with SBN's contractual rights and expectations in connection with the project, they have failed to argue this point with any specificity.  We note the contract between appellants and the Regents was not submitted until after the trial court issued its tentative ruling on the demurrers, and the trial court declined to "consider the Respondent's [(Regents')] untimely submission." Appellants offer no argument for why it would be proper for us to now consider them, and we thus decline to do so.  (Accord *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [documents not presented to trial court not considered on appeal]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' "].)[9]

Finally, we note SBN would not have an adequate remedy if the action was dismissed for nonjoinder as the limitations period has run.  (See

---

[9] With regard to the second factor in CCP section 389(b), we recognize the court may be unable to fashion relief that could directly protect appellants' "contractual rights and expectations."  However, appellants have not specifically identified what these "contractual rights and expectations" encompass and, as discussed above, these interests likely align with those of the Regents.  Moreover, such "rights and expectations" may already be protected via the contractual arrangements between appellants and the Regents.

part II.C., *post*.) We recognize, as highlighted by appellants, that SBN's failure to name and serve appellants gave rise to the present situation. However, as explained by the court in *Deltakeeper*, *supra*, 94 Cal.App.4th at page 1108, " 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' "

Based on the facts presented and the record before this court, we cannot say the trial court abused its discretion in concluding appellants are not indispensable parties to the litigation pursuant to CCP section 389(b).

## C. SBN's Cross-appeal

SBN appeals from the trial court's order granting appellants' demurrers on the ground it erroneously determined the petition was subject to CEQA's 30-day statute of limitations in section 21167, subdivision (c). SBN asserts the NOD failed to adequately describe the project and thus did not trigger the 30-day limitations period or the 20-day limitations period in section 21167.6.5(a).

### 1. Relevant Legal Framework

"After a local agency decides to approve a project for which an EIR has been prepared, it must file a notice with the county clerk. [Citations.] Among other things, the agency must ensure the notice contains a brief description of the project, information identifying the project and its location, a statement that an EIR was prepared and certified under CEQA, the agency's conclusion whether the project will have a significant effect on the environment, whether it adopted mitigation measures and a mitigation monitoring program, and where the public may examine the final EIR and

22

the record of project approval." (*Residents Against Specific Plan 380 v. County of Riverside* (2017) 9 Cal.App.5th 941, 962.)

"The notice triggers the running of a statute of limitations on CEQA challenges. 'To be timely, an action challenging the adequacy of an EIR must be commenced within 30 days after the county clerk posts the notice of determination that the project's lead agency has filed with it. [Citations.]' [Citations.] '[T]he 30-day limitations period does not begin to run if the notice of determination is substantively defective in failing to properly describe the lead agency's actions. [Citations.] A notice of a determination's adequacy is governed by the substantial compliance doctrine which " 'means *actual* compliance in respect to the substance essential to every reasonable objective of the statute' " even though it may contain " 'technical imperfections of form . . . .' " ' " (*Residents Against Specific Plan 380 v. County of Riverside, supra*, 9 Cal.App.5th at pp. 962–963.) If the lead agency's notice of determination is defective, the 180-day limitations period set forth in section 21167, subdivision (a) applies. (See *International Longshoremen's & Warehousemen's Union v. Board of Supervisors* (1981) 116 Cal.App.3d 265, 273.)

### 2. *Analysis*

SBN asserts the SEIR analyzed the environmental impacts of student enrollment increases, and the NOD was substantively defective because its project description failed to mention that analysis. We disagree.

Undoubtedly, the project description contained in the NOD does not mention the enrollment increase. The NOD states: "The campus is proposing new development to accommodate additional academic space for the [GSPP] and to provide housing for campus-related occupants. The existing Upper Hearst parking structure would be demolished and replaced

23

with apartment housing stacked on a new parking structure. The residential component would consist of up to 150 units in five stories over parking. A new academic building is proposed adjacent to the new residential building. The Project includes a minor amendment to the 2020 Long Range Development Plan to expand the Housing Zone to accommodate the proposed housing land use on the Project site." However, the student enrollment increase is not described in the SEIR as part of the project. Rather, the project—as described by both the SEIR and the NOD—involves the demolition of an existing parking structure and the construction of a new parking structure, new housing, and a new academic building. The project is not for the purpose of promoting future growth in the student body, but rather to respond to a lack of resources for the current university community.

SBN has not identified any evidence in the record to suggest the student population reassessment was a material aspect of the project. To the contrary, its petition specifically critiques the SEIR for stating the increased enrollment is not part of the project. While the SEIR considered past growth, it did so to create a revised "campus headcount baseline" from which to assess the project's impact.

We are unaware of any provision in CEQA or the CEQA Guidelines that require lead agencies to describe their baseline or EIR analyses in a notice of determination. Rather, a notice of determination merely must state the local agency's determination of "whether the project will, or will not, have a significant effect on the environment." (§ 21152, subd. (a); accord *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 514 ["The CEQA Guidelines do not demand that the [notice of exemption] itself disclose and explain all the arguable environmental implications, or all the grounds upon which such a challenge to the exemption determination might

24

be based."].) Omitting this portion of the SEIR was not a substantial defect in the NOD.

Finally, we note SBN has not demonstrated that this alleged error in the NOD was prejudicial. SBN filed its initial petition within the 30-day limitations period. Moreover, that petition specifically challenged the adequacy of the SEIR's evaluation of student enrollment increases. Thus, any alleged error in the NOD project description did not interfere with appellants' ability to make an informed decision whether to pursue legal action or its ability to bring a timely challenge. SBN's failure to name and serve appellants is unrelated to any error in the NOD's project description.

Accordingly, we conclude the 30-day statute of limitations in section 21167 applied to SBN's petition. While SBN filed its original petition within that time period, it failed to name appellants, and section 21167.6.5(a) required SBN to name and serve the real parties in interest "not later than 20 business days following service of the petition or complaint on the public agency." (§ 21167.6.5, subd. (a).) SBN failed to do so, and the trial court properly dismissed appellants without leave to amend.

## III. DISPOSITION

The trial court's order granting ACC's and CHF's demurrers without leave to amend is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

SANCHEZ, J.

A160560, A160561
*Save Berkeley's Neighborhoods v. Regents of the University of California*

26

Trial Court:       Superior Court of Alameda County

Trial Judge:       Brad Seligman, Judge

Counsel:

Law Offices of Thomas N. Lippe, APC and Thomas N. Lippe for Plaintiff and Appellant Save Berkeley's Neighborhoods.

No appearance for Defendants and Respondents.

Monchamp Meldrum, Amanda Monchamp and Rob Taboada for Real Party in Interest and Appellant Collegiate Housing Foundation.

Morgan, Lewis & Bockius, Deborah E. Quick, Phillip Wiese and Ella Foley Gannon for Real Parties in Interest and Appellants American Campus Communities, American Campus Communities Services, Inc., and American Campus Communities Operating Partnership, L.P.