Filed 10/10/25  Livable San Diego v. City of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| LIVABLE SAN DIEGO,<br><br>    Petitioner and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D084333<br><br><br>(Super. Ct. No.<br>37-2022-00043368-CU-TT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

The Law Office of Julie M. Hamilton and Julie M. Hamilton, for Petitioner and Appellant.

Office of the City Attorney, Heather Ferbert, City Attorney, M. Travis Phelps and Benjamin P. Syz, for Defendant for Respondent.

The City of San Diego (the City) adopted an initiative to change the way funds collected from development impact fees are spent. As required by the California Environmental Quality Act (CEQA) (Pub. Res. Code, § 21000 et seq.), the City posted a notice of its determination that implementing the initiative would not require revisions to the applicable environmental impact report. Livable San Diego (Livable) filed a petition for writ of mandate alleging that the initiative violated CEQA, the takings clause of the Fifth Amendment, and the state's Mitigation Fee Act. (Gov. Code, § 66000 et seq.)

The City successfully demurred to the first two claims. The trial court found that Livable's petition was filed after the expiration of CEQA's 30-day statute of limitations triggered by the City's posting of a valid notice of determination (NOD). And the court agreed with the City as to Livable's takings claim, concluding that the heightened level of scrutiny it relied on did not apply to legislatively imposed development impact fees under then-existing California law. A third cause of action based on the Mitigation Fee Act, to which the City did not demur, proceeded to trial. After ruling against Livable on the merits of that claim, the trial court entered judgment for the City.

Livable now appeals the final judgment, focusing on the order that sustained the City's demurrer to its CEQA and constitutional takings claims. It first asserts that the City's NOD was invalid—and thus incapable of triggering the 30-day limitations period for its CEQA claim—because the City had not yet passed the ordinances required to fully implement the initiative. As a result, according to Livable, its CEQA claim was timely under the alternative 180-day limitations period triggered by the posting of an invalid notice. We conclude otherwise, finding that the NOD was valid.

As for its takings claim, Livable contends that a remand is necessary because an intervening United States Supreme Court decision removed the bar to reviewing legislatively imposed development impact fees under heightened scrutiny. But notwithstanding the change in the law, we conclude that the initiative survives heightened scrutiny because that standard of review is reflected in the test the superior court later applied to reject Livable's Mitigation Fee Act claim at trial, a result Livable does not challenge. Thus, the takings claim would be barred as a matter of law by principles of collateral estoppel. Accordingly, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Livable is an unincorporated association concerned with development in the City. It filed a petition for writ of mandate and complaint for declaratory relief concerning the City's adoption of the Build Better San Diego initiative (Build Better or the initiative) that changed how funds from development impact fees (DIFs) are spent. Livable asserted claims under CEQA, the takings clause of the Fifth Amendment to the United States Constitution, and California's Mitigation Fee Act (sometimes, the Act). The court sustained the City's demurrer to Livable's CEQA and takings claims without leave to amend. It later entered judgment for the City after resolving in its favor the merits of Livable's Mitigation Fee Act claim. Livable challenges only the court's order sustaining the City's demurrer.

---

[1] Unless otherwise noted, the facts recited in this opinion are either well-pleaded in Livable's petition or gleaned from the materials of which the trial court took judicial notice. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Green Foothills*).)

3

## A.   *Build Better*[2]

A DIF is a fee "charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project." (Gov. Code, § 66000, subd. (b).)  The funds collected through DIFs may be used to finance new infrastructure projects or upgrades and to provide services to the community.  A typical example of such a use is to reduce anticipated traffic congestion by widening a road.

The City has been collecting DIFs since the late 1970s.  In 1997, it amended its municipal code to implement the DIF program that Build Better replaced.  Under the prior program, DIF funds for a particular development were required to be spent in the neighborhood in which the development was planned and only on specific capital needs identified in the City's capital improvement plan.  But because DIF funds were insufficient to fully pay for infrastructure projects, the monies often sat idle in their accounts.  Thus, many promised projects were not built despite the City's DIF accounts collectively holding more than $500 million at the end of fiscal year 2022.

One of the goals of Build Better was to eliminate the restriction on where DIF funds could be spent.  To achieve this, the initiative established three new DIFs whose funds could be spent anywhere in San Diego:  (1) fire-rescue, (2) library services, and (3) mobility services.  As discussed in more detail below, before implementing these new citywide DIFs, the City filed an NOD which stated its conclusion regarding the environmental effects of the

---

[2]    Some facts in this section are taken from the "2022/2023 San Diego Grand Jury Report (Filed May 30, 2023)," which the trial court declined to judicially notice.  On our own motion, we take judicial notice of the report for the limited purpose of providing background information.  (Evid. Code, § 452, subd. (h); *id.*, § 459, subds. (a), (c).)

initiative and that the municipal code would be amended to authorize the new DIFs.

## B.    *Livable's CEQA Claim*

### 1.    *Overview of the Relevant Aspects of CEQA*

CEQA was enacted "to '[e]nsure that the long-term protection of the environment shall be the guiding criterion in public decisions.' " (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 944.)  The purposes of CEQA are " 'to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, those impacts; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approving a project that may significantly impact the environment.' " (*Coalition for an Equitable Westlake/MacArthur Park v. City of Los Angeles* (2020) 47 Cal.App.5th 368, 376 (*MacArthur Park*).) To these ends, state and local government agencies must "first determine whether a proposed activity is a project subject to CEQA, and then to determine whether the project is exempt from CEQA or requires some form of a CEQA document" such as an environmental impact report (EIR).  (*Ibid.*)

Public agencies must prepare EIRs for " 'projects that may have significant environmental effects . . . [Citations.] . . . to ensure that government officials who decide to build or approve a project do so with the full understanding of the environmental consequences and, equally important, that the public is assured those consequences have been taken into account.' " (*Citizens Against Airport Pollution v. City of San Jose* (2014) 227 Cal.App.4th 788, 796.)  Although a new EIR is not required for every step in a project, a subsequent or supplemental report is required when

"substantial changes" are proposed or arise that require "major revisions." (*Ibid*, internal quotes omitted.) If an agency determines that an existing EIR is sufficient for a project, it must document this determination in an addendum to the report. (*Id.* at pp. 796–797.)

"When a local agency 'approves or determines to carry out a project' subject to CEQA, it must file with the county clerk's office an NOD within five working days of the approval or determination." (*MacArthur Park*, *supra*, 47 Cal.App.5th at p. 377; see also Pub. Resources Code, § 21152, subd. (a); Guidelines,[3] § 15094, subd. (d).) As relevant here, the NOD must include a description of the project, when the project was approved, and "[t]he determination of the agency whether the project in its approved form will have a significant effect on the environment." (Guidelines, § 15094, subds. (b)(2)–(4).) A "[NOD] filed with the county clerk shall be available for public inspection and shall be posted within 24 hours of receipt for a period of at least 30 days." (*Id.*, subd. (e).)

The steps of filing and posting a valid NOD "start a 30-day statute of limitations on court challenges to the approval under CEQA." (Guidelines, § 15094, subd. (g); see also Pub. Resources Code § 21167, subd. (b).) Even if there are perceived "flaws in the decisionmaking process, a facially valid and properly filed [NOD] would trigger the statute of limitations." (See *MacArthur Park*, *supra*, 47 Cal.App.5th at p. 381.) "If the agency does not file an NOD . . . or if the relevant notice is invalid, then a petitioner has 180 days from project approval to file a lawsuit." (*Guerrero v. City of Los Angeles* (2024) 98 Cal.App.5th 1087, 1089 (*Guerrero*); see also Pub. Resources Code, § 21167, subd. (a).) An NOD is invalid if it either (1) is missing information

---

[3] "Guidelines" refers to the Guidelines for the Implementation of CEQA (Cal. Code Regs., tit. 14, § 15000 et seq.).

required by the Guidelines or (2) was filed "before a decisionmaking body has approved the project." (*MacArthur Park*, at pp. 379–380.)

2. *The City's NOD and the Ensuing Trial Court Proceedings*

Development in the City is conducted in accordance with its general plan, which is supported by an EIR. On August 1, 2022, the City, acting through its city council, passed a resolution certifying an addendum to the general plan EIR.[4] The addendum contained the City's determination that the Build Better initiative would neither create any significant environmental effects nor require different mitigation measures than already described in the general plan EIR.

The City included this determination in an NOD that was approved by the city council on August 1 and was posted by the county clerk on August 2. The NOD included in its description of Build Better that the municipal code provisions concerning DIFs would need to be amended. The ordinances to do so were proposed by the city council on August 1 and later enacted by it on September 13. At the same time the NOD was approved, the city council approved several resolutions, including one amending its general plan to implement Build Better.

On October 26, Livable filed its petition challenging the City's compliance with CEQA in approving Build Better, specifically, that an addendum to the general plan EIR did not sufficiently address the environmental impact of creating the citywide DIFs. The City demurred on the ground that Livable's claim was untimely because it was brought more than 30 days after the NOD was posted by the county clerk. Livable countered that the initiative was not finally approved until the municipal

---

4    For simplicity, unless otherwise noted, all subsequent references to dates are to the year 2022.

code was amended on September 13. Thus, Livable maintained, the NOD was facially invalid and the 180-day statute of limitations applied.

The trial court sustained the City's demurrer without leave to amend. It reasoned that Build Better was approved by the City when the NOD was filed and posted because it met the Guidelines' definition of "approval"—"the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person." (Guidelines, § 15352, subd. (a).)

3. *Livable's Takings Claim*

Livable also asserted a claim that Build Better violated the takings clause of the Fifth Amendment. "When the government wants to take private property to build roads, courthouses, or other public projects," this amendment, made applicable to the state by the Fourteenth Amendment, requires it to "compensate the owner at fair market value." (*Sheetz v. County of El Dorado* (2024) 601 U.S. 267, 273 (*Sheetz II*).) In addition to the general categories of " 'physical takings' " and " 'regulatory takings,' " there is a " 'special' category of takings claims for 'land use exactions.' " (*Sheetz v. County of El Dorado* (2025) 113 Cal.App.5th 113, 130 (*Sheetz III*).) "A land use exaction occurs when the government demands real property or money from a land use permit applicant as a condition of obtaining a building permit." (*Ibid.*) A DIF is this type of exaction. (*Hamilton & High LLC v. City of Palo Alto* (2023) 89 Cal.App.5th 528, 549.)

Livable claimed that the City could not establish either the "essential nexus between the imposition of the DIF and the impact of the proposed development" or the "rough proportionality between the magnitude of the DIF and the effects of the proposed development" for Build Better to survive constitutional scrutiny. These requirements are meant to prevent the

8

government from imposing a permit condition that "requires a landowner to give up more than is necessary to mitigate harms resulting from new development." (*Sheetz II*, *supra*, 601 U.S. at p. 276.) The gist of Livable's claim was that a program allowing DIF funds to be spent in areas other than where the development that generated the funds would occur failed to meet these standards.

In alleging the City's inability to establish an "essential nexus" and a "rough proportionality" for the citywide DIFs, Livable attempted to invoke a form of " 'heightened' or intermediate scrutiny" of land-use exactions—the so-called "*Nollan/Dolan* test."[5] (*Sheetz III*, *supra*, 113 Cal.App.5th at p. 132.) The City demurred to this claim on the theory that California law categorically exempted legislatively imposed DIFs from *Nollan/Dolan* scrutiny. (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 666–670; *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 459, fn. 11.) The trial court agreed and sustained the City's demurrer without leave to amend.

## DISCUSSION

Livable challenges the court's order sustaining the City's demurrer to its CEQA and takings claims. The standard of review is de novo. (*Green Foothills*, *supra*, 48 Cal.4th at p. 42.) We assume the truth of all facts properly pleaded by the plaintiff and consider matters that were judicially noticed. (*Ibid.*; Code Civ. Proc., § 430.30, subd. (a).) When reviewing "a trial court's order sustaining a demurrer without leave to amend, ' " 'we review the trial court's result for error, and not its legal reasoning.' " ' " (*Munoz v. Patel*

---

5      *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 (*Nollan*); *Dolan v. City of Tigard* (1994) 512 U.S. 374 (*Dolan*).

(2022) 81 Cal.App.5th 761, 771 (*Munoz*).)  Therefore, we " ' "affirm the judgment if it is correct on any theory." ' " (*Ibid.*)

## A.    *CEQA Claim*

Livable's appeal as to its CEQA claim requires us to consider whether the City got ahead of itself when it filed and posted its NOD.  Livable contends that the City could not have approved Build Better by August 2, when the NOD was posted, because the municipal code still had to be amended to legally authorize the City to implement the citywide DIFs.  This final step did not occur until the city council on September 13 passed the ordinances that it proposed on August 1.  Livable argues that the NOD was invalid and its CEQA claim was therefore timely under the applicable 180-day limitations period on the theory that until the second reading of these ordinances and a final vote, the city council had the option of ordering further environmental review.  The City counters that its NOD was facially valid and thus the 30-day limitations period applies.

According to the Guidelines, an agency must file an NOD "after deciding to carry out or approve the project."  (Guidelines, § 15094, subd. (a).)  In this context, " 'project' . . . refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies.  The term 'project' does not mean each separate governmental approval."  (Guidelines, § 15378, subd. (c).)  As it relates to an NOD, " '[a]pproval' " means "the decision . . . which commits the agency to a definite course of action in regard to a project."  (Guidelines, § 15352, subd. (a).)

In assessing whether the City had finally determined to implement Build Better, we must also consider the status of its CEQA review of the initiative.  "[E]nvironmental review must be conducted before . . . 'the agency has committed itself to the project.' " (*Guerrero, supra*, 98 Cal.App.5th at

10

p. 1101; see also Guidelines, § 15004, subd. (b)(2)(B) [agencies must not "take any action which gives impetus to a planned or foreseeable project in a manner that forecloses alternatives or mitigation measures that would ordinarily be part of CEQA review"].) And " '[i]f, as a practical matter, the agency has foreclosed any meaningful options to going forward with the project, then for the purposes of CEQA the agency has "approved" the project.' " (*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 139.)

The City points to *Guerrero* as resolving a statute of limitations issue similar to the one raised here. In March 2020, Los Angeles's city planning department filed an NOD of its approval of both a tentative tract map for a private development and a mitigated negative declaration (MND) for the project.[6] (*Guerrero, supra*, 98 Cal.App.5th at p. 1096.) At the same time, the planning department filed a letter identifying as one of the conditions to the project the recordation of a final map consistent with the zoning code. (*Ibid.*) In May 2020, the planning commission adopted the same MND and recommended that the city council adopt certain zoning changes needed for the project to go forward. (*Id.* at pp. 1096–1097.) An NOD memorializing the planning commission's decisions was filed in February 2021. (*Id.* at p. 1097.) Another NOD was filed in June 2021 to reflect that the city council adopted both the MND and the proposed zoning change. (*Ibid.*)

---

[6] A mitigated negative declaration will be issued when a project is revised to address an agency's initial determination that the project as originally proposed might have caused potentially significant effects on the environment. (*Guerrero, supra*, 98 Cal.App.5th at p. 1095, fn. 2.) For our purposes, this declaration is equivalent to the City's addendum to its general plan EIR in this case.

Guerrero and others filed a petition for writ of mandate within 30 days of the filing of the last NOD, alleging among other claims, that the MND was adopted in violation of CEQA. (*Guerrero*, *supra*, 98 Cal.App.5th at p. 1097.) The trial court overruled a demurrer to the CEQA claim on the ground of untimeliness after concluding that June 2021 NOD triggered the statute of limitations. (*Ibid.*) But the Court of Appeal reversed, reasoning that "even though the City's approval of the vesting tentative tract map in March 2020 was conditioned on later discretionary approvals, it still constituted project approval under CEQA. The March 25, 2020 NOD triggered the statute of limitations on challenges to the adequacy of the MND." (*Id.* at p. 1100.) The approval of the tentative tract map was the city's "earliest firm commitment to the Project" despite that subsequent approvals were needed to implement it. (*Id.* at p. 1103.) The appellate panel also observed that there were no changes to the project that "require[d] a subsequent or supplemental MND," which meant that "later adoptions of the same MND cannot restart or retrigger a new limitations period." (*Id.* at p. 1106.)

In the City's view, the relevant circumstances here and in *Guerrero* are functionally identical. It argues that disclosing in its NOD that the addendum to the general plan EIR had been approved by the city council—along with the council's simultaneous adoption of the resolution to amend the general plan and introduction of the ordinances to amend the municipal code—committed the City to the Build Better initiative. This is so even though, as was the case with the March 2020 NOD in *Guerrero*, a subsequent discretionary approval (here, passing the ordinance) was required to fully implement it. In the City's view, there was no reason to revisit its approval of the addendum to its general plan EIR after the NOD was filed and before

12

the municipal code was amended because nothing about the Build Better initiative had changed.

We agree *Guerrero* supports the conclusion that the City's NOD was valid. It is also significant that the City's adoption of a resolution to amend its general plan and introduction of an ordinance to amend its municipal code—both of which occurred before the NOD was posted on August 2— were legislative acts that fully committed it to the initiative. (Guidelines, § 15352, subd. (a) ["Legislative action in regard to a project often constitutes approval"].) Moreover, the NOD makes clear that insofar as the City was concerned, its CEQA review of Build Better was complete and therefore ripe for any potential legal challenges. (*Guerrero, supra*, 98 Cal.App.5th at p. 1104 [the purpose of an NOD is to " ' "alert[] the public that any lawsuit to attack the noticed action or decision on the grounds that it did not comply with CEQA must be filed immediately" ' "].)

Livable contends the City's NOD was invalid because Build Better had not been granted "final approval," that is, fully implemented by all necessary amendments to the municipal code. But for an NOD to be valid, the agency's approval of a project need only be "final" for CEQA purposes, and "an agency acts to approve a proposed course of action when it makes its *earliest* firm commitment to it, not when the final or last discretionary approval is made." (*Guerrero, supra*, 98 Cal.App.5th at p. 1103; see also Guidelines, § 15378, subd. (c).) Livable places great significance on the fact that the "brief description" of Build Better in the NOD mentions the necessary amendments to the City's municipal code, suggesting that it had not fully committed to the initiative until the second reading of the ordinances and final vote approving these implementing amendments. We disagree, as the NOD clearly indicates the City was moving forward with the Build Better.

13

In support of its argument that we should reverse the trial court, Livable discounts *Guerrero* in favor of *Center for Biological Diversity v. County of San Benito* (2024) 104 Cal.App.5th 22 (*Biological Diversity*).[7] In *Biological Diversity*, San Benito County filed an NOD giving public notice of its planning commission's approval of an EIR and a conditional use permit for a commercial roadside attraction. (*Biological Diversity*, at p. 30.) As permitted by the San Benito County Code, the Center for Biological Diversity and another party (collectively, the Center) appealed this approval to the board of supervisors. (*Id.* at pp. 30, 38.) About three weeks after the first NOD was filed, the board denied the appeals and certified the EIR. (*Id.* at pp. 30–31.) The county subsequently issued a second NOD giving public notice of the board's action. (*Id.* at p. 31.)

As pertinent here, on the thirtieth day after the second NOD was filed, the Center brought a petition for writ of mandate alleging the county's approval of the EIR and permit application violated CEQA. (*Biological Diversity*, *supra*, 104 Cal.App.5th at p. 31.) The trial court sustained a demurrer on the ground that this claim was untimely because it was brought more than 30 days after the initial NOD was filed. (*Id.* at pp. 32, 34.) Our colleagues in the Sixth Appellate District reversed, reasoning that the initial NOD did not trigger the statute of limitations because the

---

[7] *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, also relied on heavily by Livable, addresses materially different circumstances and thus is not helpful here. In that case, the city council filed an NOD that identified the incorrect approval date for a project, which the agency corrected with a subsequent NOD. (*Id.* at p. 532.) The plaintiff's CEQA claim would have been timely only if the statute of limitations was triggered by the second notice. (*Id.* at p. 529.) The appellate court agreed with the trial court that the plaintiff was entitled to rely on the second notice because the first one was facially—and by virtue of the spontaneous correction, admittedly—invalid. (*Id.* at pp. 531–532.)

underlying decision to approve the EIR, having been appealed, was not an approval. (*Id.* at p. 38.) As a result, the limitations clock did not start until the second NOD was filed. (*Id.* at pp. 38–39.)

Livable attempts to analogize the NOD in this case to the initial NOD in *Biological Diversity*. As Livable characterizes the situation here, there was a possibility that the city council on September 13 might order further environmental review rather than adopt the ordinances. Thus, under Livable's logic, the City's NOD was invalid because approving the ordinances after their second reading was equivalent to the San Benito County board of supervisors' denial of the appeal.[8]

We find the analogy inapt. "Finality" in the context of the validity of an NOD concerns the state of the agency's environmental review and does not depend on subsequent discretionary approvals related to the project. (*Guerrero, supra*, 98 Cal.App.5th at p. 1103.) The county law allowing for an appeal in *Biological Diversity* stated that applications " 'which have been appealed shall be deemed not approved until the Board of Supervisors takes action to approve or deny.' " (*Biological Diversity, supra*, 104 Cal.App.5th at p. 38.) Consequently, as a matter of law, Biological Diversity's taking of an administrative appeal nullified the approval of the EIR described in the county's first NOD. (*Ibid.*)

Here, by contrast, the City's addendum to the general plan EIR *was* approved when the NOD was filed, as the second reading of the ordinances and final vote six weeks later—the last step in moving to citywide DIFs— had nothing to do with CEQA. (See *Guerrero, supra*, 98 Cal.App.5th at

---

8    Livable suggests that when the second reading of an ordinance is required before a project can be finally approved or implemented, an NOD filed before the second reading of the ordinance can never be valid. For the reasons we explain, we disagree with that contention.

15

pp. 1096–1097, 1100 [characterizing as discretionary approvals the zoning changes made after the March 2020 NOD was filed].) The second reading here and the board of supervisors' decision in *Biological Diversity*, therefore, served materially different purposes. Moreover, the City's NOD and the context in which it was filed made clear that the city council—the same body that would vote on the proposed ordinances to amend the municipal code after already having approved Build Better, the addendum to the general plan EIR, and other related resolutions—considered the matter of environmental review closed on August 2.[9]

Accordingly, the City's NOD was valid and Livable's CEQA claim initiated more than 30 days after the notice was filed was untimely.[10]

## B. *Takings Claim*

### 1. *Additional Background*

As noted, Livable unsuccessfully brought a claim under the Mitigation Fee Act. The Legislature passed the Act " 'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.' " (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864 (plur. opn.) (*Ehrlich*).) Consequently, a local agency wishing to "establish[], increase[], or impos[e] a fee as a condition of a development project" is required by the Act to "[d]etermine how there is a reasonable relationship between the fee's use and the type of development project on

---

[9] Although different entities of the city of Los Angeles approved the MND at issue in *Guerrero*, there is nothing in the opinion to indicate that a procedure similar to the appeal in *Biological Diversity* had been invoked by the objectors. (*Guerrero*, *supra*, 98 Cal.App.5th at pp. 1096–1097.)

[10] Livable does not request that we review the portion of the trial court's order denying it leave to amend either its CEQA or takings claim.

16

which the fee is imposed" and "between the need for the public facility and the type of development project on which the fee is imposed." (Gov. Code, § 66001, subd. (a)(3)–(4).)

The Act states that "[a]ny party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a development project." (Gov. Code, § 66020, subd. (a).) "[A] plaintiff challenging an impact fee has to show that the record before the local agency clearly did not support the underlying determinations regarding the reasonableness of the relationship between the fee and the development." (*Home Builders Assn. of Tulare/Kings Counties, Inc. v. City of Lemoore* (2010) 185 Cal.App.4th 554, 562.) Here, Livable claimed the "reasonable relationships" required by the Act could not be established for the citywide DIFs that Build Better implemented.

The court rejected Livable's claim, finding for each new DIF that the "City ha[d] demonstrated a reasonable relationship between both the fee's use and the need" for the corresponding services "and the new development." Having already disposed of Livable's other claims, the court entered judgment in the City's favor.

2.    *The* Nollan/Dolan *test has been satisfied for the citywide DIFs.*

The trial court sustained the City's demurrer to Livable's takings claim because it concluded that *Nollan/Dolan* scrutiny applied only to "fees imposed on individuals on an ad hoc, discretionary basis, . . . but the test does not extend to generally applicable development fees" like the citywide DIFs imposed by Build Better. Following that ruling, the United States Supreme Court decided that "legislative permit conditions" are no longer "categorically exempt from the requirements of *Nollan* and *Dolan*." (*Sheetz II, supra,* 601 U.S. at pp. 279–280.) Livable reads this intervening authority as requiring

17

*Nollan/Dolan* scrutiny to be applied to the DIFs implemented by Build Better, and it goes on to request that we vacate the judgment on this claim and remand to the superior court for a trial on this issue. For its part, the City interprets *Sheetz II* as merely standing for the general principle that legislatively imposed DIFs may be subject to the heightened scrutiny of *Nollan* and *Dolan*. It maintains that the DIFs at issue here do not warrant this heightened scrutiny because they "would [not] be a compensable taking if imposed outside the permitting process." (*Sheetz II*, at pp. 280–281 (conc. opn. of Sotomayor, J.).)

We do not resolve the threshold question of the applicability of *Nollan* and *Dolan* because we find dispositive a second argument the City raises: even if the heightened scrutiny employed in those cases were to apply, it has already been satisfied as a matter of law.[11] In *Ehrlich*, our Supreme Court held that discretionary permit conditions on development by individual property owners were subject to the heightened scrutiny of *Nollan* and *Dolan*. (*Ehrlich*, *supra*, 12 Cal.4th at pp. 868, 876, 881 (plur. opn.).) In reaching this conclusion, the court analyzed whether the Mitigation Fee Act's "reasonable relationship" standard was equivalent to *Nollan/Dolan* scrutiny. (*Ehrlich*, at pp. 866–867.) "[T]o avoid substantial questions concerning the constitutional sufficiency of the legislative standard embodied in the [A]ct," it "interpret[ed] the [A]ct's 'reasonable relationship' standard . . . as embodying the standard of review formulated by the high court in its *Nollan* and *Dolan* opinions."

---

11    After oral argument, the City requested an opportunity to provide supplemental briefing raising a new argument that *Nollan/Dolan* scrutiny does not apply to facial takings challenges. (See *Garneau v. City of Seattle* (9th Cir. 1998) 147 F.3d 802.) We deny this request because it presents another threshold issue we need not reach to decide the merits of this aspect of Livable's appeal.

(*Ehrlich*, at p. 860.) In addressing *Dolan*—which was decided after the Act was codified—the court "recognize[d] that . . . the term 'reasonable relationship' embraces both constitutional and statutory meanings which, for all practical purposes, have merged to the extent that the *Dolan* decision applies to development fees." (*Ehrlich*, at p. 867.) In short, the Act's " 'reasonable relationship' " standard "reflects the prevailing takings clause standard."[12] (*Ehrlich*, at p. 867.)

In our case, the trial court rejected Livable's Mitigation Fee Act challenge based on its conclusion that the Build Better initiative satisfied the statute's "reasonable relationship" standard. The City contends—and Livable does not dispute—that *Ehrlich* requires us to conclude the initiative would likewise survive *Nollan/Dolan* scrutiny to the extent it applies to Livable's takings claim. Indeed, *Ehrlich* compels a conclusion that the legal issue is one in the same. Were we to reverse the demurrer ruling and remand to the trial court, it would be required to grant a motion for judgment on the pleadings based on collateral estoppel. (See, e.g., *Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 413–421 [reviewing order sustaining demurrer based on issue preclusion].) Because the test that Livable seeks to

---

[12] These points are binding because Justice Mosk agreed with the plurality opinion on them. (*Ehrlich*, *supra*, 12 Cal.4th at p. 899 (conc. opn. of Mosk, J.) ["*Nollan* and *Dolan* in most cases impose no *additional* constitutional burden on the government to justify development fees beyond the burden it already bears under the state constitution and statute"]; *id.*, at p. 898, fn. 2 ["I agree with the plurality that 'the term "reasonable relationship" embraces both constitutional and statutory meanings which, for all practical purposes, have merged *to the extent* that the *Dolan* decision applies to development fees' "]; see also *Sheetz III*, *supra*, 113 Cal.App.5th at p. 151 ["the *Nollan/Dolan* test is similar to the reasonable relationship standard. . . . [¶] The California Supreme Court reached the same conclusion nearly three decades ago in *Ehrlich*"]; *People v. Harris* (1977) 71 Cal.App.3d 959, 966 [discussing binding effect of a plurality opinion].)

apply has effectively been satisfied, we have no choice but to affirm the trial court's order sustaining the City's demurrer on this claim without leave to amend. (*Munoz, supra*, 81 Cal.App.5th at p. 771 [judgment will be affirmed if correct on any theory].)

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.